## THE ROCK ISLAND SASH AND DOOR WORKS
### v.
### HENRY POHLMAN.

*Opinion filed June 23, 1904.*

1. MASTER AND SERVANT—*servant not required to make inspection for defects.* A servant may assume, primarily, that the appliance furnished him by the master is reasonably safe, and he need not inspect it with care for the purpose of discovering defects.

2. INSTRUCTIONS—*when instruction as to duty of servant is properly modified.* An instruction requiring a servant to be "observing" with reference to defects in machinery with which he is working, and holding that his "failure to observe what he should have observed" would defeat a recovery, is properly modified by requiring him to use due care and diligence for his safety.

3. SAME—*when instruction need not declare doctrine of assumed risk.* An instruction making it essential to a servant's recovery from the master that it appear that he did not know, or by the exercise of ordinary care could not have known, that the place where he was working was not reasonably safe, need not declare the doctrine of assumed risk, where that doctrine is fully and formally stated in other instructions.

4. SAME—*when instruction as to master's duty is properly refused.* An instruction stating that the master's duty as to the machine which caused his servant's injury was discharged if the machine would "work regularly and properly in all respects" is properly refused, as ignoring his duty to see that the machine was reasonably safe.

*Rock Island Sash Works* v. *Pohlman,* 99 Ill. App. 670, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Rock Island county; the Hon. W. H. GEST, Judge, presiding.

SWEENEY & WALKER, (J. C. M. CLOW, of counsel,) for appellant.

SEARLE & MARSHALL, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The Appellate Court for the Second District affirmed the judgment of the circuit court of Rock Island county entered in favor of the appellee, against the appellant

company, in the sum of $4000, and the company has per-
fected this appeal.

The action was case, to recover damages for personal
injuries received by the appellee while in the employ of
the appellant company.

Whether the trial court erred in denying the motion,
entered by the appellant company at the close of all of
the evidence, to direct a verdict in its favor, arises first
for determination.

The appellant company was operating a saw-mill in
the city of Rock Island, and had been so engaged for
about one year. It maintained a table on which were
a number of revolving rollers, by means whereof planks
and slabs, when sawed, were carried on such rollers,—
the planks to a machine called an "edger" and the slabs
to another portion of the mill. At the south end of this
table, or, as it is called, the "roller-bench," the planks
were dropped on to a system of chains called "transfer
chains," which ran at right angles with the bench, and
which, when put in motion by an employee, conveyed
the planks to the edger, some twelve feet away to the
east. There was a device by which the employee could
turn the slabs coming down the roller-bench off of the
transfer chains, from whence they were carried to an-
other part of the mill. The rollers were caused to re-
volve by a system of cog-wheels on shafts, and the
transfer chains were also operated by means of a cog-
wheel. These cog-wheels were near the south end of the
roller-bench. When the appellant company came into
possession of the mill the roller-bench was but sixty feet
in length, and it was extended by it by adding ten feet of
additional table at either end. It caused the cog-wheels
to be covered. The larger cog-wheel, which had square-
edged cogs, was covered by extending over it the boards
or planks which formed the bed of the roller-bench. The
planks which came down the roller-bench to the trans-
fer chains, some of them being four inches in thickness

and green and heavy, rested, in passing, on the plank the end of which extended over and formed the cover for this cog-wheel and pressed the plank down on the cog-wheel, and this pressure was, perhaps, increased by the warping or shrinking of the plank. The result was, the cogs cut or wore through the plank. On the 25th day of September, 1899, the appellee, while engaged in controlling the transfer of the lumber from the roller-bench to the transfer chains, was injured by having his left hand caught in the cogs of this wheel. The appellee was then of about the age of twenty years. He had worked for some time in this mill under its former ownership, but his duties were not then connected with the operation of the roller-bench or transfer chains. He had been engaged at work for the appellant company some six or seven days before he was injured, but had never worked about the roller-bench until the day he received his injuries. The logs out of which the lumber was being sawed had been taken from the river to the mill, and the lumber which came down to the roller-bench had bark upon the edges, and this bark sometimes fell from the roller-bench to the floor while in a wet and slippery condition. The appellee slipped on a piece of this bark and was thereby thrown or fell, and his left hand came in contact with the cogs of the wheel.

The appellant company had employees whose duty, in part, it was to remove such bark as might fall from the roller-bench, and the evidence for the appellant company tended to show that duty had been performed and that the floor about the roller-bench was free from bark on the morning of the day the appellee was injured. The appellee testified that he found considerable bark on the floor when he went to work and that he "kicked it away." The piece of bark which caused him to fall may have dropped on the floor after he began work,—possibly immediately before he stepped upon it. It would, to say the least, be difficult to justify a recovery on the ground

the appellant company failed to exercise reasonable diligence to remove the bark from the floor. But there was evidence tending to show that the cog-wheel which injured the appellee had cut its way through the plank covering some three or four months before the appellee was injured; that the appellant company had actual notice thereof, and that the foreman of the company had said that he would fix it, though this promise to repair was not made to the appellee. The appellant company set the appellee to work in close proximity to the cog-wheel without advising him of the condition thereof. The evidence, therefore, tended to show that the appellant company was negligent in the performance of its duty to use reasonable care to provide a safe place for the appellee to work. The dangers to be apprehended from an uncovered, rapidly-revolving cog-wheel could not but have been known and appreciated by the appellant company. The presence of wet and slippery bark on the floor where the appellee was required to work did not make the cog-wheel, within itself, more dangerous, but increased the danger of the appellee coming in contact with the wheel. The uncovered wheel was a source of danger to an employee while working at the roller-bench though the floor should be free from wet and slippery bark. If the wheel had been securely covered the appellee would not have received the injury to his hand.

The state of the proof as to the charge of negligence on the part of the appellant company was such as to warrant recovery unless the unprotected condition of the cog-wheel was so well known to the appellee or was so plain and obvious that he should be charged with knowledge of it, and be regarded as having voluntarily incurred and assumed the risk of attempting to work in such close proximity to it. We are unable to find any proof in the record that the appellee knew there was an uncovered cog-wheel there. He testified he saw the hole

in the plank, but did not know there was a cog-wheel below it until his hand was caught by the cogs. It by no means appeared from the evidence that the uncovered cog-wheel was plainly and obviously within sight of the appellee. The appellant relied on the extended end of one of the planks of the bed of the roller-bench to constitute a cover for the cog-wheel. This extended portion of the plank, under the weight of the lumber that came down the rollers, had been pressed down on the cogs and the cogs had eaten or cut their way through the plank. The plank or other timbers had probably shrunk or warped, which also brought the plank lower down toward the wheel. The testimony tended to show that when this extended end of the plank, which was intended to form the covering of the cog-wheel, was relieved of the weight of lumber on the roller-bench, the cogs of the wheel did not protrude at all above its upper surface, and that even under such pressure the cogs did not extend more than one-fourth of an inch above the surface of the plank covering. The exposed condition of the cog was by no means obvious or plain to the view at any time. When there was no lumber pressing down upon the plank which formed the covering to the wheel the cogs did not protrude, and when the lumber was so pressing down it partially covered the wheel and cogs from sight. It was a question of fact whether the appellee should have known of the condition of the covering of the wheel. The appellee had, primarily, the right to assume that the machine was reasonably safe, and was not called upon to inspect it with care to discover that it was not defective. Inspection and investigation would have been necessary to have advised the appellee of the dangerous condition of the cog-wheel, and that is not required of an employee. (*Ross* v. *Shanley*, 185 Ill. 390.) The cause was properly submitted to the jury.

The remaining complaints relate to the action of the court in ruling on instructions to the jury.

Instruction No. 5 given for the appellee defines the meaning of the term "vice-principal," seemingly in anticipation that the defense would be interposed that the injury was occasioned by the act of a fellow-servant. It is not complained that the definition is incorrect, nor is any reason pointed out why the giving of the instruction could have injured the cause of the appellant, or why the alleged error should be deemed of such gravity as to require the reversal of the judgment.

It is complained that instruction No. 1 given for the appellee undertakes to define the legal duty of the appellant company and of the appellee, and ignores entirely the question whether the appellee assumed the ordinary hazards of his employment. The instruction in plain terms advised the jury that it was necessary to the appellee's right of recovery that it should appear that he did not know, or by the exercise of reasonable care could not have known, that the place where he was set at work was not a reasonably safe place in which to work. The doctrine of assumed risk was fully and formally stated to the jury in other instructions, and it was not necessary that instruction No. 1 should, in view of what was said in that instruction, have in terms declared the doctrine of assumed risk.

Instruction No. 2 as asked by appellant requested the court to charge the jury that the law required the appellee to be "observing," and that his "failure to observe what he should have observed" would defeat a recovery. The court modified the instruction so that, in substance, it required the appellee to use due care, diligence, etc. Appellant contends the instruction should have been given as asked. We think not. The word "observe" is defined by Mr. Webster to mean, "to notice with care; to be on the watch respecting." The context was such the word "observe" would have conveyed the idea to the jury that the appellee was required to make a careful examination of the machinery. The appellee had the right to

assume that the machine was safe, and was chargeable
with notice of dangers or defects that were plain and ob-
vious to view, but was not bound to make an inspection
to ascertain if the machine was free from defects,—that
is, he was not required "to notice with care" and "to be on
the watch" for defects or imperfections, which would be
implied from the use of the word "observe" as employed
in this instruction. These observations answer the com-
plaint that instruction No. 17 was refused.

Instructions Nos. 1 and 8, asked by appellant and re-
fused, contained nothing proper to be given other than
what was plainly and fully given in instruction No. 6
in the same behalf, and were, no doubt, refused because
they were liable to be understood by the jury to charge
the appellee with notice of the condition of the cog-
wheel, whether such condition was patent and obvious
or could have been discovered by making an examina-
tion of the machinery.

Instructions Nos. 3, 9, 10, 11 and 13, asked by appel-
lant and refused, incorrectly requested the court to de-
clare that the proximate cause of the injury to appellee
was the wet and slippery bark. If ordinary prudence
would have admonished the appellant company that the
unprotected condition of the cog-wheel would probably
result in injury, such as the appellee received, to some
one of its employees, the jury would be warranted in re-
garding it as the proximate cause of the injury. (*Armour*
v. *Golkowska*, 202 Ill. 144.) The general rule, moreover,
is, that the natural and proximate cause of an injury is
a question of fact for the jury, (21 Am. & Eng. Ency. of
Law,—2d ed.—508, 509,) and this case was plainly within
the general principle.

Instruction No. 6, refused, assumed that a portion of
the cog-wheel was exposed to obvious view, and was
therefore properly refused. Instruction No. 7, refused,
not only erroneously contained the same assumption, but
erroneously asked the court to charge the jury that al-

lowing the cog-wheel to be exposed was not a negligent act, and its refusal was therefore proper.

Instruction No. 12, refused, asked the court to declare that the duty of the master was fully discharged if the machine was kept in such repair that when in use it would "work regularly and properly in all respects." This ignored the duty of the master to have the machine in such a condition of repair that it would be reasonably safe for the employee.

Instructions Nos. 14, 15 and 16, refused, charged upon the appellee the duty of diligence practically amounting to inspection of the machinery, to see that it was safe, and were for that reason properly refused.

The judgment of the Appellate Court must be and is affirmed.

*Judgment affirmed.*