## Postal Telegraph Cable Company v. William E. Likes.

### Gen. No. 12,288.

1. SAFE PLACE TO WORK—*duty of master to furnish.* It is the duty of a master to exercise reasonable care to furnish the servant with a reasonably safe place to work. It is the master's duty to inspect the place where he puts his servant to work to see that his servant is not exposed to unusual dangers; and in the absence of knowledge or the means of knowledge that such place is unusually dangerous, the servant may assume that the master has performed his duty in that regard.

2. AMENDMENT—*may be permitted upon trial.* It is within the discretion of the judge to permit an amendment to be made during the progress of the trial.

3. AMENDMENT—*proper after verdict and before judgment.* It is proper for the court to authorize an amendment after verdict and before judgment.

4. NEW CAUSE OF ACTION—*when amendment does not set up.* An amendment to a declaration which consists in setting out with greater detail the consequences arising from the cause of action, does not set up a new cause of action.

5. DECLARATION—*extent of proof required in support of, in action of tort.* It is not necessary that the plaintiff in an action of tort shall prove all of the allegations of his declaration; it is enough if he prove sufficient of such allegations to make out a cause of action.

6. DECLARATION—*effect of dismissal of defendant upon allegations of.* The dismissal of one defendant in an action of tort operates

as a striking from the declaration of all allegations which pertain to such defendant.

7. Dismissal—*when plaintiff may enter, as to one of several defendants*. The plaintiff has the right at any time during the progress of the trial to dismiss as to one of the defendants in an action of tort and the defendant or defendants not dismissed cannot complain notwithstanding the introduction of his or their defense was embarrassed by the action of the plaintiff with respect to the dismissal.

8. Variance—*when cannot be complained of*. Where after verdict and before judgment a plaintiff asks leave to file an amendment to his declaration, and the defendant objects thereto, he cannot complain of a variance.

9. Instructions—*must not invade province of jury*. An instruction invades the province of the jury which directs them that certain enumerated facts constitute a notice and warning; likewise, an instruction invades the province of the jury which tells them that certain things constitute negligence.

10. Instructions—*when cannot be complained of*. Complaint cannot be made of instructions given in a cause if a party has asked for and obtained instructions of the same character.

Action on the case for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. Lockwood Honore, Judge, presiding. Heard in this court at the March term, 1905. Affirmed. Opinion filed February 13, 1906.

**Statement by the Court.** Appellee recovered a judgment in an action for damages against appellant for the sum of $25,000.

Appellee was injured November 4, 1901, at Fort Sheridan, Illinois. He then was and for more than two years prior thereto had been a lineman in the employ of appellant. In the morning of that day appellee with three other linemen, in charge of W. J. McLaughlin as foreman for appellant, went to the Fort for the purpose of connecting it with appellant's line. Waukegan avenue, a north and south highway, bounded the grounds on the west. In and along that highway the Chicago & Milwaukee Electric Railway Company operated its road. The first line of poles set up in this highway and on the east side thereof was erected by the Chicago & Milwaukee Telegraph Company.

Postal T. C. Co. v. Likes.

In 1894 the Chicago · Telephone Company obtained the right to place and maintain one ten-pin cross-arm and wires on said poles. In 1895 appellant acquired the right to the exclusive use of these wires of the telephone company. In 1898, when the railway company constructed its road, it induced the telegraph company to consent to the removal of its poles from the east to the west side of Waukegan avenue. When this change was made the telephone company also set a tall pole on the east side of the avenue on the line between the highway and the grounds of Fort Sheridan. This pole stood about two feet east of the line of poles on which the wires of the railway company were strung. Less than one-half a mile south of this pole was the power house of the railway company. From there it carried its electric power north and south along its line of road upon "feed" wires. These feed wires running toward the north were similar in size and appearance to telegraph or telephone wires. At the time appellee was injured such "feed" wires were naked and uninsulated. They were then carrying 5500 volts of electricity. The railway company had stencilled upon its poles to the north and south of this tall pole the legend: "Dangerous, 10,000 volts." There was no stencilling or other note or mark of warning of any kind upon the tall pole. The telephone and telegraph wires strung on this pole were fastened to an upper cross-arm, while several feet below that arm there was another cross-arm to which was attached two of these naked and uninsulated "feed" wires. These feed wires were placed on this pole by the railway company about July 1, 1898. No right or license to so attach them is shown in the record.

Starting from a point about 125 feet east of the avenue, McLaughlin, Weaver and Donnelly went east with the coil of wire, while Johnson and appellee, who were the climbers, by the order and direction of said foreman, carried the wire to the west. Johnson climbed the nearest pole, which stood within the grounds, while appellee started up the tall pole. In order to reach the cross-arm upon which he was to fasten the wire he carried, appellee had to pass over the

two "feed" wires. Not knowing that they were "feed" wires, and not being warned in any manner that they were dangerous, in attempting to pass them he touched one of them. The shock loosened his hold on the pole and he was only prevented from falling to the ground by his belt catching upon one of the steps of the pole. He hung there, head downwards, until five or six men went up the pole and took him down and carried him to the guard house, where he was taken in charge by Major Ives, the U. S. Surgeon.

This suit was begun against the electric railway company in February, 1902. In April of that year appellant was joined as a defendant. The declaration, which was filed May 9, 1902, charged both and each of the defendants with negligence. At the time of the trial the amended declaration, in the first count charged appellant with negligence in failing to furnish appellee with a safe place to work, and in failing to warn him of hidden and unseen dangers; it also charged the railway company with negligence in failing to insulate these feed wires or to otherwise protect them, and in failing to warn appellee of the danger of coming into contact with them. The second count charged appellant with negligence in ordering appellee, through its foreman, to ascend said pole, and that in obeying such order he came in contact with certain wires attached to said pole by said railway company, which wires were heavily charged with electricity, exposed, uninsulated and dangerous, which facts were unknown to appellee; and that each of the defendants knew or might have known that such foreman would order appellee to ascend said pole, and each of the defendants negligently failed to insulate such wires or otherwise protect or warn appellee of the danger of coming in contact with them. The third count charges negligence of each of the defendants in failing to have said pole stencilled or to have signs of danger on said arm or pole to warn appellee of hidden and unforeseen danger, or to warn him so that he might avoid coming into contact with these wires, which were heavily charged with electricity; exposed, uninsulated and dangerous, and in failing to insulate such wires or

otherwise to protect or warn appellee of the danger of coming into contact with them.

Each count charged that the injuries sustained by appellee were caused by the joint negligence of the defendants. It is alleged in each count "That the plaintiff was thereby then and there severely and dangerously shocked, burned, cut, bruised, sprained, wounded and injured both internally and externally, and plaintiff's back, brain, spine and nervous system were then and there and thereby severely and dangerously and permanently injured," etc.; and "that on account of said injuries caused as aforesaid, plaintiff became sick, sore, lame and disordered, and so remained for a long space of time, to-wit: from thence hitherto, during which time he suffered great bodily pain and mental anguish and is still suffering intensely and is languishing in body and in mind, and in the future will continue to suffer from the effects of said injury, caused as aforesaid, and will be crippled and maimed for the rest of his natural life." Each of the defendants filed a plea of the general issue. During the trial, by leave of the court, appellee amended his declaration by inserting after the word "life," as just quoted, the words, "and was thereby rendered impotent for the rest of his natural life, and on account of his said injuries his mind has been severely impaired and injured." The defendants severally interposed a plea of the Statute of Limitations to this amendment, to which plea appellee demurred, and the court sustained the demurrer. At the close of the evidence for appellee the defendants severally asked for a peremptory instruction, but the court denied the same. The railway company elected to stand by its demurrer and offered no evidence in its behalf. Afterward, and over the objection of appellant, the attorney for the railway company in his argument to the jury was permitted to discuss and criticise the evidence offered by appellant and to discuss the rebuttal evidence of appellee.

The jury returned a verdict against both defendants, and assessed appellee's damages at the sum of $25,000. Motions for a new trial were overruled, and the court denied

the motion in arrest of judgment. "Thereupon on motion
of plaintiff's attorneys judgment was entered on the ver-
dict against the said defendant Postal Telegraph Cable
Company. Thereupon on motion of plaintiff's attorneys
this suit is dismissed as to the defendant Chicago & Mil-
waukee Electric Railway Company. Thereupon it is con-
sidered by the court that the plaintiff do have and recover
of and from the defendant Postal Telegraph Cable Com-
pany his said damages of twenty-five thousand dollars
($25,000) in form as aforesaid by the jury assessed, to-
gether with his costs and charges in this behalf expended
and have execution therefor." This appeal was then per-
fected.

LOESCH BROTHERS & HOWELL, for appellant.

WATERS & JOHNSON, TINSMAN, RANKIN & NELTNOR,
and H. B. SHERMAN, for appellee.

MR. JUSTICE BALL delivered the opinion of the court.

McLaughlin had worked for appellant for twenty-two
years and had been its construction foreman for fourteen
years prior to this accident. He had charge of all the work
of stringing wires in the territory around the city of Chi-
cago within a radius of 100 miles. He says: "I had charge
of the men in the construction department." Upon the day
in question he was in charge of the four men who went with
him to Fort Sheridan to string a wire from the interior of
the Fort to appellant's line which ran north and south in
and along Waukegan avenue. He knew and had known
for more than ten years before what a feed wire is, and
also knew that sometimes in the country such wires were
naked and not insulated. The pole upon which appellee
was hurt was a strange one to McLaughlin. He knew that
it was necessary for the workmen who climbed this pole to
pass the wires then strung upon it. He knew that the year
before at a point on this road not a mile to the south a line-
man had been killed by a naked uninsulated feed wire, and

he had been personally warned that such lines were "hot stuff." Yet with all this knowledge he did not inspect this pole or its wires, nor did he test the wires on it before he started his men to work, nor did he warn them of the possible existence of unseen dangers. Appellee was then thirty-seven years old and in good health. He had been at work as lineman for appellant for two years next prior to his injury. He had worked in the grounds of the Fort the Saturday before his injury, but his duties did not take him nearer than 150 feet of the railway. The weight of the evidence tends to show that he was not familiar with the conditions surrounding the scene of the accident.

It is the duty of the master to exercise reasonable care to furnish the servant with a reasonably safe place to work. And if there be evidence tending to show that the place so furnished is unusually dangerous, the question of the care or want of care upon the part of the master in the selection and in the inspection of the place is one of fact for the jury. It is the duty of the master to inspect the place where he puts his servant to work to see that his servant is not exposed to unusual dangers; and in the absence of knowledge or of the means of knowledge that such place is unusually dangerous, the servant may assume that the master has performed his duty in that regard. Illinois Steel Co. v. McFadden, 195 Ill., 344; Ehlen v. O'Donnell, 205 Ill., 38; Rock Island S. Wks. v. Pohlman, 210 Ill., 133.

It is clear from the evidence that at the time and place of the accident McLaughlin was the foreman of appellant in charge of this construction crew. He ordered the two linemen to string this wire. He told them what pins they were to place the wire upon, and instructed them to go on with their work. He failed to inspect the place where he set these servants to work, and failed to warn them of the possible existence of unseen dangers which they there might encounter. In so acting he represented appellant and stood in its place. For the consequences of his negligence in the exercise of the duty and authority conferred upon him by his master, appellant is liable. The fact that McLaughlin,

30

at the time appellee was injured, was engaged in untangling the coil of wire the linemen were using, does not relieve appellant from liability upon the ground that the foreman and appellee were servants of one common master. Graver Tank Works v. O'Donnell, 191 Ill., 236; I. S. Ry. Co. v. Marshall, 210 Ill., 562. In our opinion, upon the evidence, the question of fellow servant is not in issue in this case; and therefore the refusal of the court to give the instructions on this subject as asked by appellant was not error.

The court ruled correctly in sustaining the demurrer to the pleas of the Statute of Limitations filed by appellant to the amendment to the declaration made while the case was on trial. That amendment did not state a new cause of action, nor did it state any cause of action. It but set out further in detail the consequences arising from the cause of action. While we are inclined to the view that such an amendment was unnecessary, and that the evidence offered under it was already sufficiently pleaded, the right of the court to permit the amendment is too clear to need the support of argument or the citation of authorities. If appellant was surprised by this amendment, we think the terms offered it by the court and by appellee reasonably protected its rights. Appellee offered to submit to an instant examination, and the court gave appellant's counsel time from Friday noon to the following Tuesday to get expert testimony upon the questions thus raised. The court did not abuse the discretion vested in it to control the conduct of the trial by its rulings in this regard.

Appellant contends that there is a fatal variance between the averments of the declaration and the competent evidence received on the trial. In an action of tort the plaintiff need not prove all the allegations of his declaration. It is sufficient if he establish enough of them to make a cause of action.

The trial court ruled correctly when it allowed appellee to dismiss the railway company out of the case It is well settled law that in actions of tort the plaintiff may dismiss

his suit as to one of two joint defendants at any time before final judgment. When the suit was dismissed as to the railway company, the declaration thereafter stood as if all allegations relating to that company had been stricken out. In other words, so far as concerns appellant, such allegations were surplusage. If, disregarding these allegations, enough remained in the declaration to show a cause of action against appellant, and the evidence is not at variance with the declaration as it then legally stood, the point is not well taken. After the railway company ceased to be a defendant, the first count charged appellant with negligence in failing to furnish appellee a safe place to work, and in failing to warn him of unseen dangers incident thereto, and in failing to insulate these feed wires or otherwise to warn and protect him from coming into contact with the same. The second count alleged negligence on the part of appellant in ordering appellee to ascend said pole when appellant knew or ought to have known that said feed wires were there and were uninsulated. The third count charged negligence upon the part of appellant in not having said pole stencilled or otherwise marked as dangerous. In our opinion the declaration is amply sufficient to sustain a judgment based upon sufficient evidence to establish the averments contained in any count of the declaration. And we are further of the opinion that there is no such variance between the declaration as it then stood and the evidence offered by appellee as calls for a reversal of this judgment. But if there were, when appellee, after verdict and before final judgment, asked permission of the court to file an amendment to the declaration, appellant objected, and this objection was sustained. Thus appellant prevented the attempt of appellee to make the averments of the declaration correspond with the evidence. Having invited the commission of this error, if it be an error, appellant cannot in this court appeal to the doctrine of variance for relief. Union T. Co. v. Lundahl, 215 Ill., 297, 298.

When appellee asked permission to amend his declaration, and was met by an objection made by appellant, he was well within the rules of practice, and we see no sufficient

reason in the record for its refusal. Section 24, chapter 110, R. S. Hurd, provides that " At any time before final judgment in a civil suit, amendments may be allowed on such terms as are just and reasonable, * * * which may enable the plaintiff to sustain the action for the claim for which it was intended to be brought, or the defendant to make a legal defense."

Section 1 of chapter 7, R. S. Hurd, provides " That the court in which an action is pending shall have power to permit amendments * * * for the furtherance of justice, on such terms as shall be just, at any time before judgment rendered therein."

In Cogshall v. Beesley, 76 Ill., 445, it is held that an amendment to the declaration and the dismissal of the suit as to one of the defendants after verdict is proper practice.

In Bemis v. Homer, 145 Ill., 567, the court say : " It is the policy of our statute, allowing amendments, that neither party to an action shall be deprived of a substantial right through defects or omissions in pleadings, if they will use reasonable diligence to avoid that result, by applying to the court for leave to amend, or supply the omission."

It may be unfortunate for appellant that the railway company was joined with it as a defendant. It is not unusual in actions of tort that each of two or more defendants finds its defense hampered and sometimes opposed by that of a co-defendant. This arises from the fact that each is selfishly and, therefore, naturally seeking to avoid individual liability on the case as charged. If the plaintiff fairly and honestly sues more than one of the alleged wrongdoers, this may place upon them a burden which cannot be escaped. In the case at bar, at the close of the plaintiff's evidence each of the defendants filed its written motion to instruct the jury to find it not guilty. The trial judge denied these motions. Whereupon the railway company elected to abide by its motion and rested its case so far as the introduction of evidence is concerned, while appellant proceeded to put in evidence in its own behalf. The decision of the court upon these motions indicated that to his mind appellee had made a case as to

each of the defendants which must go to the jury. By re-
fusing to adduce evidence in its defense, the railway com-
pany did not put itself outside of the case. Its defense
might be affected by the evidence tendered by appellant and
by the rebuttal evidence put in by appellee. The railway
company therefore had the right to cross-examine the wit-
nesses thereafter presented and to argue to the jury the ef-
fect of all the evidence received during the trial. We do not
see that the railway company exceeded its legal rights in
the conduct of its defense after its motion to dismiss the suit
was denied.

Appellant complains because its tendered instructions
Nos. 27, 30 and 43 concerning the question of the assumption
of risk by appellee, were marked "Refused." This question
is fully covered by given instructions Nos. 26, 33, 35, 37, 38,
39 and 42. These instructions fully state the law upon the
subject of assumed risk under any reasonable view of the evi-
dence presented and received.

Appellant's instruction No. 43 was properly refused. It
tells the jury that certain enumerated facts gave notice and
warning to appellee. What is notice is a question of fact for
the jury, and is not one of law for the court.

Appellant's refused instruction No. 51, in effect, instructs
the jury that it was the duty of appellee before he ascended
the pole to inspect the same and the wires attached thereto;
and that if they believed from the evidence he did not do so,
their verdict must be for appellant. The rule as thus laid
down is not the law in this State. With us it is the duty
of the master to furnish the servant a reasonably safe place
in which to work. It is also the duty of the master to in-
spect the place before he sends his servant there to work, if
the master knows or has reasonable notice of means of knowl-
edge that such place may contain unseen dangers. The
servant, unless he knows or has means of knowledge of hid-
den dangers or of unusual dangers in such place, need not
inspect the same, but has the right to assume that the master
has discharged his duty in this regard.

In Ehlen v. O'Donnell, 205 Ill., 38, the court say: "It

was not incumbent upon the servant to inspect the implement which the master provided for him upon and with which to perform his work, but he had the right to rest upon the assurance that the master would perform the obligations and duties which the law cast upon him to exercise reasonable care to provide him a reasonably safe scaffold upon which to work."

In Missouri M. I. Co. v. Dillon, 206 Ill., 151, the court say: "It is well settled that the master must use reasonable care to furnish his servants with a reasonably safe place for the performance of their work; and he is liable for the negligent performance of such duty, whether he undertakes its performance personally, or through another person."

In Ross v. Shanley, 185 Ill., 393, it is said: "Appellant's foreman was chargeable with a specific duty, to-wit, that of exercising reasonable care to see that the place where he sent appellee to work was reasonably safe, and appellee had the right to rely upon the performance of such duty by appellant's foreman before he gave the order for him to do work where he did. Appellee was not required to make a critical and careful examination of his surroundings at the place where he was sent to work by the foreman. We think it was properly left to the jury to determine whether appellant's foreman exercised such reasonable and ordinary care as to see that the place where he ordered appellee to work was reasonably safe before he sent him there to work, and also whether appellee knew, or should have known, the danger to which he was exposed."

Instruction 52 was properly refused. It tells the jury that certain things constitute negligence, thus invading their province, and it is amply covered by the twelve given instructions numbered 26 and 33 to 42 inclusive. The practice of emphasizing instructions by repetition is improper and should be discouraged. The instruction given by the court is good law in this case. By it the jury were told that as the evidence and the instructions warranted it, they might find both of the defendants guilty, or either of them guilty and the other not guilty, or both of them not guilty. In any

event appellant is estopped to question the correctness of this instruction, because by its given instruction No. 57 and its tender of refused instruction No. 19, it asked the court so to instruct the jury. A party cannot complain of an instruction asked by and given for his adversary, if he has asked for and obtained an instruction of the same character. England v. Fawbush, 204 Ill., 400. An examination of the instructions shows that the court in this regard fully and fairly protected the rights of appellant.

This opinion is already so long that we do not feel justified in reciting the evidence in detail. It is sufficient to say that we have carefully examined it and are of the opinion that there is evidence in the record which if believed by them justified the jury in finding that McLaughlin, the foreman, acting for appellant and binding it by such action, failed to furnish appellee a reasonably safe place to work, and failed to inspect the pole and the wires attached thereto before he sent appellee up the pole, although he had knowledge which should have induced him to inspect the same in the interest of the safety of his workmen; and that the foreman ordered appellee to ascend said pole when he knew or ought to have known that the wires then on said pole were feed wires, naked and uninsulated; and that the knowledge of said foreman in these particulars greatly exceeded the knowledge in that regard of appellee. In other words, we think that under the evidence the jury were justified in finding a verdict against appellant.

The amount of this verdict is large. It is greater than it is probable we would have found had the case been submitted to us for determination. Appellee at the time he was injured was in the prime of life and in sound health. From then until the trial he suffered greatly, his left arm was cut off between the wrist and the elbow, and he is otherwise a physical wreck. There is much evidence tending to show a marked mental impairment, and he is subject to delusions and hallucinations, that such condition is progressive and permanent and that ultimately he must be placed in an asylum for the insane. We find no evidence of passion or

prejudice upon the part of the jury. Under all the circumstances of the case we do not feel that we ought to disturb the verdict.

The judgment of the Circuit Court is affirmed.

*Affirmed.*