PAUL BONATO, Admr., Defendant in Error, *vs.* THE PEA-
BODY COAL COMPANY, Plaintiff in Error.

*Opinion filed February 25, 1911.*

1. MASTER AND SERVANT—*what is not an ordinary risk assumed by a servant.* It is the duty of the master to exercise reasonable care to provide a reasonably safe place for his servant to work, and non-compliance with this duty is not one of the ordinary risks assumed by virtue of the servant's employment.

2. SAME—*a servant may assume risk by voluntarily continuing in employment with notice of danger.* A servant may assume that the master has performed his duty by exercising reasonable care to provide a reasonably safe place to work, unless the servant has notice that such duty has not been performed or the danger is obvious to a person of ordinary intelligence, in which case the servant may assume the risk by voluntarily continuing in the employment.

3. SAME—*servant is not required to make an inspection to ascertain dangerous conditions.* A servant employed in the work of sinking a shaft for a coal mine, one portion of which shaft was the air-shaft, cannot be said, as a matter of law, to have assumed the risk of injury from the falling of ice which had formed in the air-shaft, where it would have required careful inspection to discover the presence of the ice, and there is no evidence that he knew it was there or that his means of knowledge were equal to those of his foreman.

4. EVIDENCE—*whether witness is competent to give expert opinion is a question for the court.* Whether a witness is competent to give an expert opinion is a question of fact for the trial judge, and can only be reviewed when there is a clear abuse of such discretion.

5. SAME—*what is not improper testimony by experts.* Testimony of witnesses called to testify as experts upon the subject of formation of ice in air-shafts, to the effect that they had been employed at one time in sinking a shaft at a certain place and that there were reasonable grounds to believe, from that and other experience, that ice would accumulate in air-shafts, does not amount to saying that ice had formed in the shaft they were sinking, and is not improper.

6. INSTRUCTIONS—*when instruction is not erroneous in ignoring question of assumed risk.* An instruction in a damage suit against the master cannot be said to be erroneous in ignoring the questions of due care and assumption of risk on the part of the servant, where the purpose of such instruction was not to state

the law in regard to negligence and liability, but only to state the measure of damages in case there should be a recovery.

7. Under the evidence in this record the questions whether the master, by the exercise of due care, could have discovered the presence of ice in the air-shaft, whether the servant had equal means of knowledge as to such fact and whether he assumed the risk of injury, were questions of fact for the determination of the jury, under proper instructions.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Montgomery county; the Hon. TRUMAN E. AMES, Judge, presiding.

A. M. FITZGERALD, and GEORGE B. GILLESPIE, (UNDERWOOD & SMYSER, LANE & COOPER, and GILLESPIE & FITZGERALD, of counsel,) for plaintiff in error.

EARLY & WILLIAMSON, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an action on the case brought in the circuit court of Montgomery county by Paul Bonato, administrator of the estate of Nicola Bonato, deceased, to recover damages resulting to the next of kin of Nicola Bonato by reason of his death on February 12, 1906, which it is alleged was caused by the negligence of plaintiff in error. The trial below resulted in a judgment against the plaintiff in error for $2000. On appeal to the Appellate Court that judgment was affirmed. The case is brought here by writ of *certiorari.*

The declaration contains two common law counts, charging negligence in not providing a safe place in which defendant in error's intestate might perform his work, and also in failing to inspect an air-shaft and discover and remove ice which had formed therein. Both counts alleged that the deceased was in the exercise of due care when he was injured.

Plaintiff in error owned a tract of land near Nokomis, in said county, on which it was engaged in sinking a coal shaft. This shaft was about twenty-seven feet long and ten feet wide and divided into three parts,—two hoisting compartments and an air-shaft. This latter was about two feet wide, extending across the entire west end of the shaft, separated from the hoisting compartments by timbers and planks and connected at the top with a fan by a tunnel about thirty feet long. The inside of the air-shaft was an entirely smooth surface, but it was not lined and does not appear from the evidence to have been absolutely air or water-tight. The fan and air-shaft were used for ventilation purposes while the shaft was being sunk, the fan being so operated as to draw the air up instead of forcing it down. The air-shaft and the other compartments were extended at the time to within about twenty feet of the bottom of the shaft, which had then been sunk to a depth of one hundred and fifteen or one hundred and twenty feet. Defendant in error's intestate went to work for plaintiff in error in December, 1905, and continued in that employ until his death. The men worked day and night, in shifts. The leader or "boss" of the shift in which Bonato worked was Mike Riley. Bonato and the other workmen took part in building these various compartments, including the air-shaft. During the construction of the coal shaft some water had been encountered, there being more water at the end of the shaft where the air-shaft was located than at any other point. Ice had previously formed in the hoisting chambers, and on the morning of the accident, before Bonato went to work, some ice was removed from the bottom of the air-shaft. Riley, Bonato's foreman, was told of this fact when he went to work in the morning but there is no proof that Bonato knew of it. The manner in which the air-shaft was constructed afforded no means of observation for the workmen, and they could not ascertain whether ice was in this shaft except by special inspection. Bonato's

shift went to work at eight o'clock on the morning of his death. His work then consisted of drilling, shoveling and cutting with a pick and at times assisting in handling the timbers and curbing the shaft. When they went down that morning some of the men noticed a quantity of ice formed on the side of the hoisting compartment. The attention of Riley was called to this, whereupon he and one of the workmen cut away a portion of the ice and then returned to the bottom of the shaft. Shortly thereafter a blast was prepared in the shale at the bottom, and the men went to the top, as was their custom, until after the blast was fired; when they returned to the bottom and resumed work. Riley then ordered Bonato to do some work in the southwest corner. While he was there at work, directly under the air-shaft, several tons of ice fell from that shaft and injured him so that he died less than an hour after.

At the close of defendant in error's evidence, and again at the close of all the evidence, the plaintiff in error asked an instruction directing a verdict. These instructions were both refused, and it is here contended that this was error.

It is the duty of the master to provide a reasonably safe place for his servant to work. Non-compliance with this duty is not one of the ordinary risks assumed by the servant. (*Armour* v. *Golkowska,* 202 Ill. 144.) The servant may assume that it has been performed unless he is chargeable with notice that it has not been, or if such unsafe condition was so apparent as to have been obvious to a person of ordinary intelligence, in which event he would have assumed the risk of injury from such defect by voluntarily continuing in the service. (*Schillinger Bros. Co.* v. *Smith,* 225 Ill. 74.) The evidence tends to show that the deceased knew of the formation of ice in the hoisting compartment, but there is no evidence indicating that he had equal means of knowledge with the superintendent of the mine or the shift bosses or that he had any knowledge of ice forming in the air-shaft. It was only by careful inspection and ob-

servation that deceased could have known of the dangerous condition of the air-shaft, and this was not required of him. (*Rock Island Sash and Door Works* v. *Pohlman,* 210 Ill. 133.) He had come from Italy only three years prior to his death. He first went to Clinton, Indiana, and worked in a mine, loading coal, and then came to Nokomis and went to work on this job. He had never worked in a coal mine before coming to America. The evidence is conflicting as to whether the forming of ice in this air-shaft could have been reasonably foreseen. The testimony on behalf of the plaintiff in error is to the effect that in an up-draft air-shaft of this kind they would not have expected ice to form although they might have expected it in a down-draft air-shaft, while the evidence on behalf of defendant in error was that the formation of ice in such an air-shaft, whether down-draft or up-draft, might reasonably be expected. Under the evidence in this record the questions whether by the exercise of due care the presence of ice could have been discovered by plaintiff in error, whether the deceased had equal means of knowledge as to such fact and whether he assumed the risk of injury, were all clearly questions of fact for the determination of the jury under proper instructions. The trial court did not err in refusing to direct a verdict for plaintiff in error.

It is further contended that it was error to permit two expert witnesses for defendant in error to testify, because they were not qualified by experience to give expert testimony as to the formation of ice in air-shafts. Whether a witness is competent to give an expert opinion is a question of fact for the trial judge and can only be reviewed when there has been a clear abuse of discretion. (2 Elliott on Evidence, secs. 1036, 1037; 5 Ency. of Evidence, p. 550; 1 Wigmore on Evidence, sec. 561.) On this record we do not think the trial court abused its discretion in this regard.

It is also insisted that these experts were permitted, in effect, to testify that ice had formed in a shaft when it was

being sunk five years before, at Sawyerville.   These wit-
nesses testified that they were employed in sinking this last
mentioned shaft, and from that and other experience there
were reasonable grounds to believe that ice would accumu-
late in this air-shaft.   They did not testify that ice had
formed in the Sawyerville shaft.

It is further urged that the trial court erred in giving
the fourth instruction for defendant in error, which told
the jury that if they "found, from the evidence, that the
defendant is guilty of the negligence charged in either
the first or second count of the declaration," resulting in
the death of Bonato, then there could be a recovery by the
widow or next of kin of "such damages as the jury may
deem, from the evidence and proof, a fair and just compen-
sation of whatever pecuniary damage, if any, the evidence
shows that the said widow and next of kin have sustained
by reason of said death, not exceeding $10,000."   The ob-
jection urged against this instruction is, that it ignored the
question of due care and assumption of risk on the part of
Bonato.   The instruction is identical in all material respects
with those passed upon by this court in *Chicago, Burlington
and Quincy Railroad Co.* v. *Payne,* 59 Ill. 534, *Chicago,
Milwaukee and St. Paul Railway Co.* v. *Dowd,* 115 id. 659,
*Pennsylvania Co.* v. *Marshall,* 119 id. 399, *Chicago, Mil-
waukee and St. Paul Railway Co.* v. *O'Sullivan,* 143 id. 48,
*Illinois Central Railroad Co.* v. *Gilbert,* 157 id. 354, and
*Elgin, Joliet and Eastern Railway Co.* v. *Thomas,* 215 id.
158.   In all of those cases it was held not to be regarded
as an instruction stating the law as to negligence, but simply
as one relating to the measure of damages in case plaintiff
should recover, and in each case it was held not erroneous.
It is clear from the reading of these decisions that the same
argument was urged against the correctness of this instruc-
tion that is urged here.   The cases cited and relied on by
plaintiff in error here to show that this instruction was er-
roneous are plainly distinguishable, since the instruction in

each of the cases so relied on purported to state the facts showing a right of action, and there is no conflict in those decisions as to instructions of that character and the one given in this case. In *Illinois Central Railroad Co.* v. *Gilbert, supra,* this court, in discussing the correctness of a like instruction, said: "It relates solely to the measure of damage and need not incorporate the requirement that plaintiff was in the exercise of due care and caution." This instruction did not attempt to state the doctrine of negligence or lay down the grounds upon which recovery could be had by defendant in error. We do not think the jury were misled by it, and under these authorities it was not erroneous.

We find no reversible error. The judgment of the Appellate Court will be affirmed.        *Judgment affirmed.*