# John Glaza, Appellee, v. Great Northern Moulding Company, Appellant.

## Gen. No. 16,136.

1. NEGLIGENCE—*what establishes prima facie case.* Non-compliance with an ordinance providing for the protection of machinery, when established, makes a *prima facie* case of negligence.

2. MASTER AND SERVANT—*when question of assumed risk not one of law.* The question of whether a risk has been assumed does not become one of law unless the evidence is such that no reasonable mind can conclude otherwise than that the risk had been assumed.

3. CONTRIBUTORY NEGLIGENCE—*injury from unguarded machine.* If an injury results from an unguarded machine, whether there was contributory negligence by the plaintiff is to be determined by the jury from a consideration of all the facts and circumstances connected with the accident including the matter of alleged insufficient light, the slippery condition of the floor, etc., where the plaintiff was required to work.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the HON. OSCAR E. HEARD, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed. Opinion filed February 6, 1912. *Certiorari* denied by Supreme Court (making opinion final).

F. J. CANTY, E. E. GRAY and J. C. M. CLOW, for appellant.

MATTHEW J. HUSS and GALLAGHER & MESSNER, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court.

The appellee, hereinafter called the plaintiff, recovered a judgment of $1,500 in the Superior Court against the appellant, hereinafter called the defendant, for damages for personal injuries received by the plaintiff April 17, 1905, while in the employ of the defendant. The case was tried before the court and a

jury, the jury rendering a verdict in the amount for which judgment was afterwards entered.

The record shows that the plaintiff was a man of about sixty years of age. He was born in Poland, and had lived in the city of Chicago about eighteen years prior to the accident. During twelve years of this time he had been in the employ of the defendant. For six years previous to the time of the accident he had worked on the fifth floor of the defendant's mill, stripping moulding with a rip saw. He was paid nine dollars per week for this service. On the day of the accident he was told by the superintendent of the mill to go to the basement or first floor and ask the foreman to get some lumber. This was about eight o'clock in the forenoon. It would appear that some lumber was furnished him, but about 12:30 at noon he again saw the foreman and told him he did not have lumber enough. The foreman then said to him, according to the testimony of the plaintiff, that he should go down and rip the lumber himself, as the foreman did not have any man he could send for that purpose. Plaintiff testified that he told the foreman he was not well acquainted with the machine, and thereupon the foreman went with him and showed him how to work the machine and directed the plaintiff and his helper to proceed with the new work. There was a platform in front of the machine about four feet long. The machine had two or four rollers in front and two in the back on the table of the machine and there was a saw extending about eight inches above the table back of the rollers. The machine was operated by a belt from an overhead shaft which came down around a pulley on the right hand side of the machine. The cog-wheels operating the rolls were on the left hand side and on the edge of the machine, and had no covering or protection of any kind; they were four inches in diameter. The evidence tended to show that the room was poorly lighted, the

light being mainly from a skylight about four or five feet square; that this skylight was not clean; that broken glass had been replaced by wood and sheet iron; that the skylight was covered with a wire screen, upon which were a lot of stones, bricks and other things, which tended to cut off the light. It appears that there were electric lamps hanging from wires in the room, but that it had not been the custom in the mill to use these electric lamps except in the winter time. The plaintiff testified that he did not know how to turn on the lamps, and that the conditions in respect to the light were the same when the foreman showed him how to operate the machine as when he worked upon it later. The right side of the machine was close to pipes which were covered by a box or boxes about 3 1-2 feet wide. About two feet from the machine on the left side there was a truck of lumber, and also a lumber pile about three feet high, and another lumber pile back of where the plaintiff stood of a similar height. At the back of the machine and in front of the platform there were sawdust and sticks on the floor. Plaintiff testified that he had never worked on the machine before the day on which he was injured, and that he had never seen it run by anyone before the day in question. He further testified that he complained to the foreman because of the conditions there, and especially about not having enough light. The manner in which the plaintiff was injured, as related by himself, is as follows:

"I had a board about ten inches wide, and the saw didn't want to take that; then I went on the left hand side, and had to turn around, and when I was about to pull it out,—I was to make a step and my left foot caught, and I fell on the machine, and when I fell my hand caught on the two wheels on the edge of the machine; it was kind of dark and I couldn't see the cog wheels. I couldn't see them before I got hurt; I

couldn't see the wheels because when I fell I just fell on those two wheels.

"What caused me to fall was that I kind of caught my foot on a two foot stick and tripped; the strip my foot caught on was on the left hand side of the machine. It was under the lumber and near the machine, about two feet away from it. The lumber was piled up this way, and the stick came out from the lumber towards the machine about four inches. The stick was about two feet long, an inch thick and about 1 3-8 inches wide. There was saw-dust on the end of the stick and from the stick. The stick was covered with sawdust. At the time I tripped on this piece of lumber, it was not kicked or knocked away. It remained in the same place where I kicked it. I had not seen this stick before I tripped and fell. It was covered with sawdust. I saw it for the first time when I fell. I saw it under my foot. I afterwards saw that it was between my feet. When I slipped, the helper was just pulling this board out, so as to hand it back to me, and I wanted to pass then, and my foot was caught, and I fell. The stick didn't stand up, it was laying flat (indicating). I didn't see it because it was covered with sawdust."

He further testified that he was confined to his home for a year and seven months, and it appears that the accident necessitated the amputation of three fingers, plaintiff losing an inch and a half of his middle finger, two inches of the third finger and an inch of the small finger.

We are asked to reverse the judgment on the ground that the court erred in refusing to direct a verdict for the defendant, and because of alleged erroneous instructions given at the request of the plaintiff, and the refusal to give certain instructions as tendered by the defendant.

It is argued, first, that the defendant was not negligent in its conduct towards the plaintiff, and second, that plaintiff assumed the risk.

In the declaration the charge is made that the defendant was guilty of negligence in failing to comply with an ordinance of the city of Chicago. This ordinance was offered in evidence, and reads as follows:

"In every factory, work shop or other place where machinery is employed, the belting, shafting, gearing, elevators and every other portion of the machinery when so located as to endanger the lives and limbs of those employed therein while in the discharge of their duties, shall be, as far as practicable, so covered or guarded as to make them reasonably safe and to prevent injury to such employees."

No attempt appears to have been made by the defendant to show that this ordinance was complied with. Non-compliance with the ordinance would seem to make a *prima facie* case of negligence. Commonwealth Elec. Co. v. Rose, 214 Ill. 545; C. & E. I. R. R. Co. v. Crose, 214 Ill. 602; U. S. Brg. Co. v. Stoltenberg, 211 Ill. 531; C. & E. I. R. R. Co. v. Monchell, 193 Ill. 208. In the case last mentioned the court held that it was not error to instruct the jury that the running of a train through a city in excess of the speed authorized by an ordinance of the city is negligence as a matter of law. The matter was dismissed by the appellant in its brief in the case before us by the mere statement that even with the existence of the ordinance shown, the law is clear that the plaintiff assumed the risk, and cites Browne v. Siegel, Cooper & Co., 191 Ill. 226, as being conclusive upon that point. In that case it was held that the owner of a building was not liable for the death of a servant caused by his falling down an open elevator shaft, where although the plaintiff's evidence is sufficient to sustain the finding that the defendant was negligent in failing to safeguard the elevator entrance, as required by ordinance, yet the same evidence shows not only that deceased assumed the risk but was guilty of contributory negligence. It was further held that ordinarily whether a servant has assumed the

danger which he encounters or has been guilty of contributory negligence are questions of fact, but that they become questions of law when all reasonable minds could draw but one conclusion from the evidence. In our opinion, the case cited does not sustain the position of the defendant in the case now under consideration. We think it was clearly within the province of the jury to determine whether under all the circumstances the plaintiff was guilty of contributory negligence. In determining this question they should have taken into consideration all the facts and circumstances connected with the accident, including the matter of alleged insufficient light, the slippery condition of the floor, etc., where the plaintiff was required to work. As said in Ames & Frost v. Strachurski, 145 Ill. 192:

"If by reason of the slippery condition of the floor, there was greater danger of employes losing their footing and falling against the machine, there was greater occasion for care and diligence in so guarding the machinery as to make it safe for their workmen to be about it."

The language used by the Supreme Court in Rock Island Sash Works v. Pohlman, 210 Ill. 133, might, we think, be used with propriety in the present case:

"The state of the proof as to the charge of negligence on the part of the appellant company was such as to warrant recovery unless the unprotected condition of the cog wheel was so well known to the appellee or was so plain and obvious that he should be charged with knowledge of it, and be regarded as having voluntarily incurred and assumed the risk of attempting to work in such close proximity to it. We are unable to find any proof in the record that the appellee knew there was an uncovered cog wheel there."

The question of assumed risk was properly left to the jury to determine. Ross v. Shanley, 185 Ill. 390.

Complaint is made of the action of the court in giving three instructions tendered by the plaintiff, as

244 APPELLATE COURTS OF ILLINOIS.

Makuch v. Chi. Junct. R'y Co., 167 Ill. App. 244.

well as the refusal of the court to give five instructions offered by the defendant. We think no error was committed by the court in these respects. Thirty-eight instructions were given to the jury, having been tendered in about equal proportions by the two parties to the litigation. These instructions we think fully advised the jury of the law by which it should be governed in reaching a verdict.

The judgment will be affirmed.

*Judgment affirmed.*