Donald J. Baran, Plaintiff-Appellee, v. City of Chicago Heights, a Municipal Corporation, Defendant-Appellant.

Gen. No. 52,546.

First District.

August 5, 1968.

Rehearing denied September 30, 1968.

Warren R. Ross and James East, of Chicago (Warren R. Ross and James East, of counsel), for appellant.

Harold A. Liebenson and Irwin M. Berkley, of Chicago (Harold A. Liebenson, Irwin M. Berkley, Harry J. Director, and Michael Weininger, of counsel), for appellee.

GOLDENHERSH, J.

Defendant, City of Chicago Heights, appeals from the judgment of the Circuit Court of Cook County entered upon a jury verdict in the amount of $40,000.

As grounds for reversal defendant argues that plaintiff was guilty of contributory negligence as a matter of law, plaintiff failed to prove that defendant was guilty of any negligence, the trial court erred in its rulings on evidentiary matters and in refusing to give four instructions tendered by defendant.

The evidence shows that on December 8, 1960, the date of the occurrence in question, Ashland Avenue extended north and south in the defendant City of Chicago Heights. It forms a "T" intersection with Hickory Street, an east-west street. There is no street or roadway to the south of the "T" intersection. Immediately to the south of Hickory Street a vacant lot extends for a distance of approximately 150 feet to a railroad embankment, 12 to 15 feet high, which parallels Hickory Street. There is a tree in the vacant lot, located approximately 20 to 30 feet south of the south edge of Hickory Street, and about 5 feet east of the center of Ashland Avenue. A street light located at the northeast corner of the "T" intersection is mounted on a standard approximately 25 feet high, on an "arm" which extends approximately 8 feet from the standard.

Shortly after midnight plaintiff was driving south on Ashland Avenue. The weather was cold and the streets were dry. He had not previously been any further south on Ashland than 14th Street, 4 blocks north of Hickory Street. He was driving approximately 25 miles per hour and as he approached Hickory Street he had his city driving lights on.

Plaintiff testified that as his car entered the intersection, the light from his headlights "melted" into the glare caused by the street lamp and he was unable to see that the road ended there. His automobile continued onto the vacant lot, and when he tried to swerve, he struck the tree.

There were no signs, barricades or reflectors to indicate that Ashland Avenue terminated at that point.

The parties stipulated that a proposal to erect a lamppost on the northeast corner of Hickory and Ashland was adopted by the City Council on December 14, 1959. An exhibit offered and admitted into evidence shows that defendant ordered the installation by Commonwealth Edison Company of a street light to be located at the northeast corner of Ashland and Hickory. The specifications call for a Light Unit Lumen Rating of 6,000, mast arm installation with prismatic refractor and multiple-type connection.

In his complaint as amended, plaintiff charges inter alia, that defendant was negligent in that it created a dangerous condition by improperly lighting the intersection and failing to erect signs or reflectors to warn motorists of the condition.

Defendant contends that plaintiff failed to prove that it was guilty of any negligence, and relying upon Healy v. City of Chicago, 131 Ill App 183, Owens v. City of Chicago, 162 Ill App 196, and City of Chicago v. Seben, 165 Ill 371, 46 NE 244, argues that it cannot be held liable because the street light was selected, located and installed, with reasonable care, pursuant to a plan adopted

and authorized by defendant acting in its governmental capacity, and no liability can result from the exercise of such governmental function unless the plan itself is shown to be grossly negligent.

We have reviewed the authorities cited by the parties and conclude that the word "plan," as used in the cases, means a scheme or program of action, such as the decision to install a street light at a designated intersection. To sustain defendant's contention would require that "plan" be defined to mean the specifications for the project, and this, in our opinion, is not consistent with the decisions of our courts of review. The error of such a construction is demonstrated in the following statement of Mr. Justice Adams in his dissent in Healy v. City of Chicago, found at page 192, "The law in this state has always been that a municipal corporation must exercise ordinary care to keep and maintain its sidewalks in a reasonably safe condition, and such being the law, it seems to me absurd that a municipal corporation may so plan and construct a sidewalk that, owing to its construction, it cannot be maintained in a reasonably safe condition; that if a person be injured by reason of a defective and unsafe sidewalk, and sues the municipality, it will be a sufficient answer to the suit to prove that it was so planned and constructed by the municipality. Such is not the law of this state."

The applicable rule is stated in Johnston v. City of East Moline, 405 Ill 460 wherein at page 466, 91 NE2d 401, the Supreme Court said, "A municipal corporation acts judicially or exercises discretion when it selects and adopts a plan in the making of public improvements, but as soon as it begins to carry out that plan it acts ministerially and is bound to see that the work is done in a reasonably safe and skillful manner. (Citing cases.)" That this rule applies to the lighting of a city's streets is clearly demonstrated by the Supreme Court's statement, also found at page 466, "As

225

early as City of Chicago v. Powers, 42 Ill 169, the principle was recognized that where a municipality undertakes to protect a street or bridge by lights it is liable for negligence if it does it in an insufficient manner."

Both parties offered testimony concerning the lighting of the intersection. Defendant called a police officer and a member of defendant's City Council, both of whom lived in the vicinity of the scene. They testified with respect to the area lighted by the street lamp and that the intersection and railroad embankment were clearly visible.

Plaintiff called an expert witness and defendant contends that the trial court erred in denying its request for a voir dire examination of the witness to determine his qualifications, and erred further in finding him qualified, and in admitting his expert testimony.

Neither party has cited any authority which bears directly on defendant's contention that it was entitled to a voir dire examination of the witness.

The Supreme Court has on numerous occasions stated the rules which govern the determination of the qualifications of an expert, and the admissibility of expert evidence.

In Mahlstedt v. Ideal Lighting Co., 271 Ill 154, 110 NE 795, the Supreme Court at page 171, said: "Expert evidence is admissible when the witnesses offered as experts have peculiar knowledge or experience not common to the world, which renders their opinions founded on such knowledge or experience an aid to the court or jury in determining the question at issue. Expert testimony is proper when the subject matter of the inquiry is of such a character that only persons of skill or experience in it are capable of forming a correct judgment as to any fact connected therewith."

As to the qualifications of an expert, in Bonato v. Peabody Coal Co., 248 Ill 422, at page 426, 94 NE 69, the court said: "Whether a witness is competent to give an

expert opinion is a question of fact for the trial judge and can only be reviewed when there has been a clear abuse of discretion." In People v. Jennings, 252 Ill 534, at page 550, 96 NE 1077, the court said: "The question of the qualification of an expert rests largely in the discretion of the trial court. (Bonato v. Peabody Coal Co., 248 Ill 422, and cases cited.) There can be no arbitrary or fixed test but necessarily only a relative one, dependent somewhat on the subject and the particular witness."

In Miller v. Pillsbury Co., 33 Ill2d 514, at page 516, 211 NE 733, the Supreme Court said: "While there has been a reluctance to permit expert testimony on many matters on the basis that it invades the province of the jury, confuses the issues and usurps the function of the jury, the trend is to permit expert testimony in matters which are complicated and outside the knowledge or understanding of the average person, and even as to matters of common knowledge and understanding where difficult of comprehension and explanation. The jury still may accept or reject such testimony."

The expert testified that he held the degree of Bachelor of Science in Electrical Engineering, with a major in Illuminating Engineering, had worked for ten years with a firm of architects and engineers with whom he designed both exterior and interior illumination, was now practicing as an electrical and illuminating engineer, was the chief electrical engineer for the United States Federal Office Building in Chicago, and the consulting illuminating engineer for a portion of the South Outer Drive in Chicago, and a number of large apartment and industrial buildings.

 Reviewing the above stated qualifications in the light of the rules enunciated by the Supreme Court, we hold that the trial court did not abuse its discretion in denying defendant's request for a voir dire examination of the witness, or in permitting him to testify as an expert.

Although defendant's only claim of error with respect to this witness is that he was not shown to be qualified, we briefly review his testimony. He testified that he is a member of the Illuminating Engineering Society which adopts and sets standards for the designing of various types of lighting. The society published a set of standards for highway lighting. He examined the general area and the electrical standard at the intersection and expressed the opinion that the intersection was improperly lighted, because the pole and light are in the wrong location. He described the type of lighting which was proper and explained why it should be done in that manner. The standards set by the Illuminating Engineering Society for lighting "T" intersections were offered and admitted in evidence.

The evidence is conflicting, and creates a question for the jury as to whether defendant was negligent in the manner in which it lighted the intersection. We have considered defendant's argument based upon Locigno v. City of Chicago, 32 Ill App2d 412, 178 NE2d 124, and Resnick v. Michaels, 52 Ill App2d 107, 201 NE2d 769, that it was not required to post signs and cannot be held liable for its failure to do so. Upon the facts shown by this record, those cases are not controlling. The trial court correctly refused to direct a verdict on the issue of defendant's negligence.

Defendant contends that plaintiff was guilty of contributory negligence as a matter of law, because the evidence shows he drove at such a rate of speed that he could not stop his automobile within the range of his vision, and continued to drive forward when his vision was obscured. The evidence presented a fact question on the issue of plaintiff's contributory negligence, and the jury answered a special interrogatory favorably to plaintiff. Applying the rule of Pedrick v. Peoria & Eastern

R. Co., 37 Ill2d 494, 229 NE2d 504, we hold that the trial court did not err in refusing to direct a verdict.

█ Defendant contends that the trial court erred in refusing four instructions. The abstract does not contain any part of the conference on instructions, fails to indicate whether the tendered instructions are contained in IPI, shows neither the objections to the instructions nor the grounds on which the trial court based its rulings, and therefore, nothing is presented for review by this court.

█ Defendant argues that the court erred in admitting into evidence a photograph of plaintiff's left leg which shows a healed scar extending from his buttock almost to the knee. Under Stegall v. Carlson, 6 Ill App 2d 388, 128 NE2d 352, it would have been proper to permit plaintiff to disrobe and exhibit the scar, and we hold that the photograph was admissible.

█ Defendant contends that the verdict is excessive. The evidence shows plaintiff suffered multiple fractures of the mandible, lost many teeth, suffers pain, and has difficulty chewing. He suffered fractures of the femur, requiring open reduction, and installation of a stainless steel plate. He was hospitalized on three occasions. He proved special damages in excess of $6,000. The courts have repeatedly held that the amount of damages to be assessed is peculiarly a question of fact for the jury, and if the jury is properly instructed on the measure of damages, an appellate court should not substitute its judgment as to the sum to be awarded in a given case, for that of the jury. Smith v. Illinois Cent. R. Co., 343 Ill App 593, 99 NE2d 717; Hulke v. International Mfg. Co., 14 Ill App2d 5, 142 NE2d 717; Ford v. Friel, 330 Ill App 136, 70 NE2d 626. From our examination of the evidence, we cannot say the verdict was excessive.

We find no error requiring reversal and the judgment of the Circuit Court of Cook County is, therefore, affirmed.

Judgment affirmed.

EBERSPACHER and MORAN, JJ., concur.