SCHILLINGER BROS. COMPANY

*v.*

ERNST E. SMITH.

*Opinion filed December 22, 1906—Rehearing denied Feb. 7, 1907.*

1. MASTER AND SERVANT—*rule as to assumed risk.* One who enters the service of another necessarily has in view risks ordinarily connected with such service, and by his contract of employment he assumes such risks; but he has the right to assume that the master will perform the duties imposed upon him, and the contract does not include any assumption by the servant of risks due to the master's failure to perform such duties.

2. SAME—*master's duty as to servant's place of work is a personal one.* The master's duty to use reasonable care to furnish his servant with a reasonably safe place to work is a personal one, which the servant may assume has been discharged, unless he is charged with notice to the contrary; but he cannot assume that the place so provided is reasonably safe if he knows the contrary or if the defects are open and obvious to a person of ordinary intelligence, and in such case he will assume the risk of injury by voluntarily continuing in the service.

3. SAME—*when a servant does not necessarily assume risk.* A brick-layer who has not worked upon a certain scaffold since the supporting horses were spliced, and who does not know how the splicing was done nor how much material has been placed upon the scaffold before he came to work, does not, as a matter of law, necessarily assume the risk of injury from the falling of the scaffold, due to the negligent splicing of the scaffold, which rendered it unfit for its intended purpose.

4. SAME—*fact that another servant's negligence combines with that of the master does not excuse latter.* Liability of the master for injuries to a servant from the falling of a scaffold is not excused by the fact that the negligence of a fellow-servant in heavily load-

ing the scaffold contributed to its fall, where it would not have fallen under the load put upon it had the master not been negligent in constructing the scaffold.

5. SAME—*relation of vice-principal does not depend upon rank or authority.* A vice-principal is a servant who represents the master in the discharge of those primary and personal duties which the master owes to his servants and which he cannot so delegate to others as to relieve himself from liability for their proper performance, and hence the relation of vice-principal does not depend upon the question of a servant's rank or authority.

6. SAME—*common laborer may be a vice-principal.* A common laborer engaged in preparing a place for other servants to work or appliances for other servants to use is, as to such work, the vice-principal of the master, irrespective of whether or not he has any authority over the other servants.

7. EVIDENCE—*when permitting conclusion of witness to stand is not prejudicial.* Refusal to exclude a conclusion of a witness to the effect that a certain servant of the defendant was the "boss tile-setter" is not prejudicial, where, from the facts which the court required the witness to detail with respect to such servant's duties, it is apparent the conclusion was correct.

8. PLEADING—*count charging injury to negligence of other servants should allege they were not fellow-servants.* A count in a declaration filed by a servant against the master which alleges that the plaintiff's injury resulted from the negligence of other servants of the defendant should further allege that such servants were not fellow-servants of the plaintiff.

9. INSTRUCTIONS—*when instruction authorizing recovery on defective count is not prejudicial.* Error in giving an instruction authorizing recovery upon proof of any count in the declaration, which would include one count which failed to state a cause of action, is not prejudicial, where the jury returned a special finding that the injury was not the result of the negligence charged in the objectionable count, thus showing they did not base their verdict thereon.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

McCASKILL & SON, for plaintiff in error.

JOHN W. D'ARCY, for defendant in error.

Mr. Justice Cartwright delivered the opinion of the court:

Ernst E. Smith, defendant in error, a brick-layer employed by Schillinger Bros. Company, a corporation, plaintiff in error, while engaged in laying a wall of fireproof tile was injured by the falling of a scaffold provided for him to work upon, and he sued plaintiff in error to recover damages for his injuries. He charged in the various counts of his declaration that the scaffold was unsafe and plaintiff in error was guilty of negligence in furnishing it for his use; that the scaffold was overloaded by other agents and servants of plaintiff in error who were not his fellow-servants, and that he went upon the scaffold by the direction of defendant's foreman. The plea was the general issue, and upon a trial a verdict of guilty and assessing damages was returned, upon which judgment was entered. An appeal was taken to the Appellate Court for the Second District, where the judgment was affirmed, and a writ of error was then sued out from this court to review the judgment of the Appellate Court.

The trial court refused to direct a verdict of not guilty, and the refusal is assigned as error. It was proved, and is not now denied, that the defendant was guilty of negligence in the construction of the scaffold. Plaintiff, with others, had been setting tile in the wall, and when the wall became too high to lay the tile from the floor they were laid from a scaffold fifty feet long, with a platform on top five or six feet wide, resting on wooden horses. The scaffold, at the time of the accident, was fourteen feet high, and had been raised as the work progressed. The horses were thirteen feet apart, and two of them near the middle section had originally been but ten feet high and had been raised by nailing one-inch boards on the legs at the bottom. The boards were old, rotten and knotty and were unfit for the purpose, and were nailed on the legs with small six-penny nails, which

were insufficient for such use. On the morning of the accident plaintiff arrived at the building somewhat late. The other men had placed a large quantity of tile on the platform from the floor above for the brick-layers to work with, and there was a mortar board and three men on the platform. When plaintiff came in, Mueller, one of the tile-setters, said that plaintiff was late and asked him what was the matter. Plaintiff said that he had been telephoning his brother, and after changing his clothes asked Mueller where they were going to start, and Mueller replied, "Right on top here." Mueller started up a ladder to the platform and plaintiff followed him. Mueller turned one way and the plaintiff the other, and plaintiff reached under the mortar board for his trowel. As he was straightening himself up the scaffold fell and he was injured.

It is contended that the court ought to have directed a verdict of not guilty because the plaintiff knew the condition of the scaffold and the amount of tile upon it, and therefore assumed the risk of its falling, and also for the reason that the proximate cause of the accident was not the insufficiency of the scaffold, but the overloading of it with tile by Mueller, who is alleged to have been a fellow-servant. When one person enters the service of another he necessarily has in view the risks ordinarily connected with such service, and by his contract of employment he assumes such risks. If he receives an injury from the incidental risks and hazards ordinarily connected with the employment he cannot hold the master responsible. In entering upon the service he has a right to assume that the master will perform the duties imposed upon him, and the original contract of employment does not include any assumption by the servant of risks or dangers due to a failure of the master to perform such duties. Among the personal duties of the master is the duty to use reasonable care to furnish the servant with a reasonably safe place in which to work. The servant may assume that the duty has been performed unless he is chargeable

with notice that it has not been.  He cannot assume that the place provided for him to work is reasonably·safe when he knows the contrary, and if there are defects which are obvious to a person of ordinary intelligence he will be charged with a knowledge of such defects and the risk and danger arising therefrom.  In such a case he assumes all risk of injury from the defect by voluntarily continuing in the service.  (*Chicago and Eastern Illinois Railroad Co.* v. *Kneirim,* 152 Ill. 458; *East St. Louis Ice, etc. Co.* v. *Crow,* 155 id. 74; *Armour* v. *Brazeau,* 191 id. 117; *Browne* v. *Siegel, Cooper &·Co.* id. 226.)   In this case the defendant had been guilty of negligence in furnishing an unsafe scaffold, and the plaintiff did not assume the risk arising therefrom unless he was chargeable with notice of the unsafe condition of the scaffold and the weight that had been placed upon it.   Plaintiff was not at work the previous day when the horses were spliced, and testified that he noticed the scaffold was up and it looked like any other scaffold, and that he was ignorant both of its condition and of the weight upon it.   He also testified that he could not see from the floor level how many tile were on the platform, and his testimony must be taken as true on the motion to direct a verdict.   If he had examined the boards with which the legs were spliced, he, of course, would have discovered that they were rotten and unfit for the purpose, but he could not have known that the nails were small and insufficient.   He came in late, changed his clothing in a hurry and followed Mueller up the ladder, when the platform immediately fell.   The court could not say, as a matter of law, that the plaintiff knew, or ought to have known, that the scaffold was unfit for the use for which it was intended or that it would not support the weight that was on it in safety.

It is next contended that the court ought to have directed a verdict on the ground that the proximate cause of the falling of the scaffold was that it had been overloaded by a fellow-servant.   It would make no difference in the liability

of the defendant if the negligence of a fellow-servant of the plaintiff combined with the proved negligence of the defendant, and to justify the court in directing a verdict it would have been necessary to first find that the scaffold was fit for the ordinary uses to which it was to be devoted. The court could not have done that, but, on the contrary, the evidence justified the conclusion that the scaffold would not have fallen if it had been fit for the use for which it was intended. Doubtless it would not have fallen if there had been no more weight upon it than such a scaffold would support. Counsel on one side contend that the tile was placed on the platform by Mueller as a fellow-servant, while it is insisted on the other side that Mueller was a vice-principal, for whose acts the defendant was responsible. The evidence for the plaintiff was that Mueller superintended the work and controlled the other laborers, but the evidence for the defendant was that he was not a foreman or vested with any authority over the plaintiff or the other brick-layers. It is clear that he was not a vice-principal in the proper meaning of that term. Although a foreman, superintendent or other superior servant has sometimes been called a vice-principal, there is a clear distinction between the two. The question whether a servant is a vice-principal does not depend in any degree upon his rank or superior position or superintendence or control of other servants, but depends wholly upon the duties which he performs. Servants who have no control whatever over other servants may so represent their principal as to make the master responsible for their acts. (*Libby, McNeill & Libby* v. *Scherman,* 146 Ill. 540.) A vice-principal is a servant who represents the master in the discharge of those primary and personal duties which every master owes to his servant, and which the master cannot delegate so as to relieve himself from responsibility for their due and proper performance. Such duties include the exercise of reasonable care to furnish reasonably safe machinery and appliances, to furnish and maintain a reasonably safe place to

work, and to make reasonable and proper inspection, from time to time, of such machinery and appliances. (*Mobile and Ohio Railroad Co.* v. *Godfrey,* 155 Ill. 78; *Baier* v. *Selke,* 211 id. 512; 12 Am. & Eng. Ency. of Law,—2d ed.—948.) The common laborer who spliced the horses for this scaffold was a vice-principal, because he stood in the place of the defendant in the performance of a personal and absolute duty toward the plaintiff, for the performance of which the defendant was responsible regardless of the rank and position of the person to whom it was entrusted. (*Chicago and Alton Railroad Co.* v. *Maroney,* 170 Ill. 520.) A master may be liable for the negligent or improper exercise of authority conferred upon a foreman or other superior servant, (*Chicago and Alton Railroad Co.* v. *May,* 108 Ill. 288,) but in this case there was no negligent or improper order given by Mueller, if he was a foreman. Whatever the position or authority of Mueller may have been, the court could not have said, as a matter of law, that any more tile were placed on the scaffold than was reasonably fit and proper in the execution of the work or that a scaffold properly constructed would have fallen under such a weight. The court did not err in refusing to direct a verdict.

It is next contended that the court erred in rulings on the admission of evidence. One witness said that Mueller was the boss tile-setter, and defendant moved to strike out the statement as a conclusion of the witness. The court reserved a ruling until the witness explained at length what Mueller did in the way of giving directions and orders and superintending the business, and then denied the motion in view of what the witness had testified to. If the facts which the witness had stated were true Mueller was the boss, and it would not have benefited the defendant if his conclusion had been stricken out.

The boards with which the horses were spliced were exhibited to a witness who had qualified as an expert, and he was allowed to testify that they were not fit for use for scaf-

folding purposes.   The objection to his opinion is, that the jury would know as much as he on the question whether old, rotten, cross-grained and knotty boards were fit for use in a scaffold, and that it was not a question of science, skill or trade.   There may be cases where the opinion of an expert on quite similar questions would be proper, but it is perhaps true that it does not require an expert to tell whether such boards as were used in this case were fit to carry a weight of about one thousand pounds.   There was no dispute of the fact that the boards were unfit, and undoubtedly it was a matter of common knowledge.   It is not contended that the jury could have come to any other conclusion, and the ruling, if incorrect, was not harmful or ground for reversal.

The court gave an instruction at the request of the plaintiff which authorized the jury to find for him if he had proved the allegations contained in his original declaration, or the additional counts, or any of said counts, by a preponderance of the evidence.   The giving of instructions which refer the jury to the declaration to determine what is therein alleged and necessary to be proved is not regarded with favor but in many cases is not ground for reversal.   In this case the second count of the declaration did not state any cause of action, and if it did not appear that the verdict was not based on that count the giving of the instruction would be serious error.   That count charged, as a cause of the injury, negligent overloading of the scaffold by servants, agents and employees of the defendant, without alleging that such servants, agents and employees were not fellow-servants of the defendant.   It did not aver that there was any defect in the scaffold, and its allegations, if proved, would have been just as consistent with the theory that the defendant was free from liability as that it was liable.   (*Joliet Steel Co.* v. *Shields,* 134 Ill. 209; *Chicago City Railway Co.* v. *Leach,* 208 id. 198.)   Where the allegation is that an injury to one servant has resulted from negligence of other servants of the same master it is necessary to allege that the negligent

225 — 6

servants were not fellow-servants of the injured servant. But in this case the record shows that the jury did not base their verdict on the second count. They returned a special finding that the proximate cause of the plaintiff's injury was not the overloading of the scaffold, and therefore the instruction is not ground for reversing the judgment.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

FARMER and VICKERS, JJ., took no part in the decision of this case.