## Joseph J. Duffy et al. v. Emil Jacobson.

### Gen. No. 4,814.

1. PARTIES—*effect of absence of defendants at trial, upon question of sufficiency of plaintiff's proof.* An insufficiency of proof to support the plaintiff's declaration cannot be supplied from the fact that the defendants, or some of them, were not present at the trial.

2. VERDICT—*when excessive.* A verdict in an action on the case for personal injuries of $10,000 held excessive, in that it did not appear that any serious permanent injury resulted as a consequence of the injury complained of.

3. DECLARATION—*when insufficient in action by servant against master for personal injuries.* A declaration in an action by a servant against his master for personal injuries sustained is insufficient where it does not allege that such injury did not result through the negligence of a fellow-servant of the plaintiff.

4. DECLARATION—*what cures defect in failing to allege that the injury did not result from the negligence of a fellow-servant of the plaintiff.* The insufficiency of a declaration in an action by a servant against his master for personal injuries, in failing to allege that the injury did not result from the negligence of a fellow-servant of the plaintiff, is cured by qualifications contained in the

instructions given which required proof of the fact by the plaintiff that his injury did not so result.

5. DECLARATION—*when allegation of duty not sufficient.* It is not enough for a count to allege that the defendants owed to the plaintiff a certain duty; it must set up the facts from which the law raises the duty.

Action in case for personal injuries. Appeal from the Circuit Court of Will county; the Hon. F. L. HOOPER, Judge, presiding. Heard in this court at the April term, 1907. Reversed and remanded. Opinion filed August 6, 1907.

**Statement by the Court.** This is a suit by Emil Jacobson against Joseph J. Duffy and Mortimer J. Scanlan to recover damages for injuries received by him while working upon an excavation for the drainage channel of the Sanitary District of Chicago upon a certain portion of that work described as section two. The declaration charged that the contractors who were doing the work were said Duffy and said Scanlan, and that plaintiff was in their employ. The excavation was in solid rock. In the manner employed for doing the work holes were drilled certain distances apart across the channel from one side to the other, by machinery operated by steam. Then the machinery would be moved back and located in the proper line to drill the next row of holes across the channel. Then another set of employes did what was called "springing the holes," in the row already drilled. A small charge of dynamite would be put in each hole and this charge connected by wire with an electric battery. The charges would then be exploded by a man at the battery. The result was that the loose dirt, rock and water in each hole was thrown out and the holes were thus cleaned out. Afterwards the holes were loaded with heavier charges of dynamite and the dynamite was discharged by the battery and the rock thereby dislodged and loosened, ready to be carried away. On the thirty-first day of December, 1904, plaintiff was working on the drill. It had been moved back from one row of holes and work had been commenced upon

another row. A signal was given that the first row
of holes was about to be "sprung." Plaintiff heard
it and left his place upon the drill. He either became
confused and stepped in the wrong direction, or he
stepped upon a loose rock which moved beneath him
and caused him to step in the wrong direction. He
was directly over a loaded hole when it was exploded.
He was thrown in the air and fell on his back and
was injured and was removed to his home and was
in bed for some six weeks thereafter and claims to
have been permanently disabled. The physician who
attended him testified that he had contused wounds on
the inner side and on the back of the right leg and on
the front part of the abdomen, and that fine pulverized
stone filled the wounds, passing through the skin, but
not into the muscles; that the scrotum and testicles
were hard and swollen and that there was a thin watery
discharge from the scrotum, and that on a later ex-
amination of the plaintiff, after he had ceased to treat
him, he found the right leg somewhat smaller than the
left. The theory of the declaration was that defend-
ant did not give the plaintiff warning or a warning
for a sufficient length of time before the explosion.
There was a jury trial and a verdict for plaintiff. A
motion for a new trial and a motion in arrest of judg-
ment were each denied. Plaintiff had judgment and
defendants appealed.

J. L. O'DONNELL, T. F. DONOVAN and ROBERT J.
FOLONIE, for appellants.

A. E. MILLER and J. S. REYNOLDS, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.
One of the grounds assigned why a new trial should
be granted was that the verdict as to Scanlan was
against the weight of the evidence. This is pressed
upon our consideration. The evidence on that subject
is as follows: Albert Ahrens testified that he was in

the employ of "Joe J. Duffy and Company" on section two. Thomas Goodman, an employe on said section, said he was working for George Byers and that he supposed that Byers was working for J. J. Duffy. William F. Berry, another workman on section two, testified that the contractors were J. J. Duffy and Scanlan. He did not state the source of his knowledge on direct examination. On cross-examination he was asked whether he knew this of his own knowledge, and he answered that, as far as he understood, it was J. J. Duffy and M. J. Scanlan; that this was not from hearsay; that he remembered seeing it; that, as far as he understood, he saw it somewhere, but he could not say where; that he had seen it J. J. Duffy, and was told that his partner was Scanlan; that he supposed that he was working for the same company on December 31, 1904, as J. J. Duffy's name was on everything, but he did not remember whether it said "and Company," or "Contracting Company," or just what the rest was. When asked whether he was not working for the J. J. Duffy Contracting Company, he answered that he knew it was J. J. Duffy and there was more to it, but he could not tell what it was; that he could not say whether he had ever seen Scanlan's name on a check; that he did not remember ever seeing Scanlan's name on any paper there. Robert Bibb, an employe on section two, testified that J. J. Duffy was the contractor. Howard Blackburn testified that the contractors at the time plaintiff was hurt were J. J. Duffy and Company, and that M. J. Scanlan was the company. He did not state the source of his information. Appellee insists here that Blackburn was defendant's superintendent, and that this should be treated as the evidence of a witness in a position to know the fact. The record does not disclose that Blackburn then was, or ever had been, in the employ of the defendants, or either of them. He testified that he was assistant superintendent on the drainage canal on section one, the same as at the time he testified, and that he was

still assistant superintendent when he testified. Elsewhere he testified that he was in the employ of the Sanitary District of Chicago. It does not appear that the defendants, or either of them, had the contract for section one, or that Blackburn had any business relations with either of the defendants, or that he had any means of knowing who the contractors on section two were, except from hearsay. Plaintiff testified in chief that he worked for J. J. Duffy and M. J. Scanlan, and he did not then disclose the source of his information. On rebuttal he testified that before he went to work on the channel he was out hunting one day and met J. J. Duffy and had a conversation with him, and asked him who the company was and who was doing the work, and that Duffy said it was himself and M. J. Scanlan. This statement by Duffy could not bind Scanlan, nor was it proof against him. Plaintiff did not state any other source from which he derived the information that Scanlan was one of the contractors, and we must assume that he had no other source of information. The foregoing was plaintiff's proof upon the subject. The defense called Edward Duffy, who testified that he was working for his brother, J. J. Duffy, and had been for about twenty years; that he had a personal knowledge of the business affairs connected with his contract with the Sanitary District on the drainage channel; that he had seen and read the contract with the Sanitary District; that J. J. Duffy made that contract and was the contractor on the work; that the contract is not signed Duffy and Company; that J. J. Duffy was the contractor and owned the tools, machinery and appliances used in this work on section two; that all accounts were deposited in the name of J. J. Duffy; that M. J. Scanlan was head bookkeeper and head office man under a salary; that Duffy was in Chicago a considerable portion of the time and Scanlan had power to sign all checks used in paying off the men, and that all pay-roll checks were signed by J. J. Duffy and M. J.

Scanlan; that Scanlan was not on the work, but was in the office and had charge of the work in the office; that his name was not used in connection with the business as J. J. Duffy and Company in this drainage channel work; that if Duffy was absent in Chicago Scanlan used to sign both Duffy's name and his own to the checks as a precautionary measure. Defendants asked a witness whether Scanlan was a partner of J. J. Duffy, but an answer was prevented by the objection of plaintiff. The foregoing is all the testimony to which our attention is called on this subject. The only fact having any tendency to show that Scanlan had any interest in the work, except as bookkeeper and office man on a salary, is that he signed Duffy's name and his own to payroll checks, and this is shown to have been a part of the work which he performed for Duffy as an employe, in accordance with a customary practice where an employe signs the name of his principal. The rest of the testimony that Scanlan was one of the contractors either rests upon hearsay or comes from persons who are not shown to have had any means for knowing the fact. On the other hand, it is positively shown that he was merely an employe. Plaintiff seeks to support the judgment as against Scanlan by the fact that neither he nor J. J. Duffy testified. Plaintiff alleged in his declaration that Scanlan was one of the contractors by whom plaintiff was employed and by whose neglect he was injured. It was essential that he prove that allegation. If defendants were of the opinion that it had not been proved they were not obliged to take the stand. At the time of the trial Scanlan lived in another county, and there is nothing in the record to show that he was personally present at the trial. There is proof that J. J. Duffy was absent in Chicago with this contract in matters connected with litigation between himself and the Sanitary District, attempting to settle a pending suit, and that he was not present at this trial.

We are of opinion that their failure to testify cannot be used to make a case for plaintiff, and that the proofs do not warrant us in permitting this judgment to stand against Scanlan.

The verdict and the judgment are for $10,000. We find nothing in the evidence which would justify us in maintaining so large an award, unless plaintiff's powers of procreation have been destroyed by this accident. The physician who treated plaintiff gave testimony tending to show that plaintiff's right testicle was seriously impaired and perhaps destroyed, but that his left testicle was normal. Another physician, testifying for the plaintiff, said he had known of a case where one testicle had been removed and all the functions had been normally restored, and that upon an examination of plaintiff he found his testicles smaller than normal. A third physician, called by plaintiff, who only examined plaintiff three days before the trial, for the purpose of testifying, said he found the testicles atrophied and that he could not say positively whether they were permanently injured, but there would probably never be any return of vitality to those parts. The attending physician testified that the injuries would be more or less permanent, but that he could not say how much. There was proof that this condition found in plaintiff could have proceeded from other causes, such as gonorrhea, syphilis, masturbation, etc. There is no proof what plaintiff's physical condition in these respects had been before this explosion, except that he testified that he did not know that he had ever had any such disease as gonorrhea, tuberculosis, syphilis or any venereal disease. We conclude that the verdict is excessive in view of the proof before us, and that the court should have required a reduction.

The declaration contained eight counts. During the trial plaintiff dismissed the second, fourth, seventh and eighth counts. The case went to the jury upon the first, third, fifth and sixth counts. The first count

alleged that plaintiff was a servant of defendants and that he was injured by the negligence of other servants of defendants. It did not aver that these other servants were not plaintiff's fellow-servants. This count did not state a cause of action. If plaintiff had proved that he was injured by the negligence of his fellow-servants, such proof would have established the case stated in the count, but it would not have shown an injury for which defendants would be liable. Joliet Steel Co. v. Shields, 134 Ill. 209; Chicago City Ry. Co. v. Leach, 208 Ill. 198; Schillinger Bros. Co. v. Smith, 225 Ill. 74. It seems to be supposed by plaintiff that the doctrine announced in the Shields case, *supra,* was abandoned when that case was again before the Supreme Court, in Joliet Steel Co. v. Shields, 146 Ill. 603. This is a misapprehension. After the case had reached the trial court again the declaration was amended so as to allege that the servants of defendant, by whose negligence plaintiff was injured, were not fellow-servants with plaintiff. The question of insufficiency of pleading was thus removed from the case, and the question whether the new allegation was proved was a mere question of fact. In the case at bar, while the count was defective, the instructions given for plaintiff defined the relation of fellow-servants, and told the jury in effect that before they could find for plaintiff it must appear from the proof not only that he was injured by the negligence of servants of defendants, but also that said servants were not fellow-servants with plaintiff. We are inclined to hold, for the purpose of the present decision, that these qualifications in the instructions, requiring proof of an essential element omitted from the first count, cured the defect, though this must be regarded as a debatable proposition. But this defect in the first count was repeatedly pointed out by defendants' counsel during the trial, and plaintiff ought to have amended the count in that respect, and plaintiff ought not to go to trial again without proper averments on this subject. The

third count has the same defect. The fifth count
charges that it was the duty of defendants to warn
plaintiff when they were about to spring a hole and
give plaintiff time to escape all danger, and that they
failed to so warn plaintiff, whereby plaintiff was not
aware that holes were about to be sprung, and they
were sprung and plaintiff was injured. There is no
averment of any fact which made it the duty of de-
fendants to give such warning. The count did not
aver that plaintiff was in a position where he needed
warning or was likely to be injured if he was not
warned, or that defendants knew of or had reason to
anticipate plaintiff's presence at such a place. There
is no allegation that defendants failed to warn plaintiff
or failed to give the usual warning, but only that they
failed to warn plaintiff in time for him to escape all
danger. It is not enough for a count to allege that
defendants owed plaintiff a certain duty. It must
state the facts from which the law raised the duty.
Mackey v. Northern Milling Co., 210 Ill. 115; McAn-
drews v. C. L. S. & E. Ry. Co., 222 Ill. 232. The sixth
count does not show that defendants knew or should
have known that plaintiff was near the holes about to
be sprung, or was where he needed warning. It does
not charge that warning was not given, but only that
it was not given in time for plaintiff to escape all
danger. We mention these defects in order that they
may be corrected, if enough is charged to permit the
necessary amendments at this late date.

Other alleged errors have been argued, but the same
questions are not likely to arise again in the same
form, and we think it unnecessary to discuss them
now. For the errors above pointed out, the judgment
is reversed and the cause remanded.

*Reversed and remanded.*