### Paul Bonato, Administrator, Appellee, v. Peabody Coal Company, Appellant.

1. MASTER AND SERVANT—*duty to furnish safe place to work.* The master is only required to exercise reasonable care to furnish his servant with a reasonably safe place in which to work.

2. MASTER AND SERVANT—*right to assume that place to work is safe.* A servant primarily has the right to assume that the place to which he has been assigned is safe and he is not called upon to inspect his surroundings with care; and he may recover of his master for an injury resulting from a danger which only inspection and investigation would have disclosed.

3. MASTER AND SERVANT—*what risks are not assumed.* A servant does not assume risks or dangers due to a failure of his master to exercise reasonable care to furnish him with a reasonably safe place to work, unless he has notice that the place provided for him to work is not reasonably safe, or unless such unsafe condition is so apparent as to have been obvious to a person of ordinary intelligence, in which event the servant is chargeable with knowledge of such condition and the risk and danger arising therefrom and assumes all risk of injury from the defect by voluntarily continuing in the service.

4. INSTRUCTIONS—*must not ignore material issue.* An instruction which directs a verdict, if certain facts are facts, is erroneous if it omits and ignores any material issue in the cause which pertains to the right of recovery.

5. APPEALS AND ERRORS—*when cost of additional abstract taxed*

*to appellant.* If the abstract filed by the appellant is incomplete and defective, the cost of an additional abstract filed by the appellee will be taxed against the appellant.

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of Montgomery county; the Hon. ALBERT M. ROSE, Judge, presiding. Heard in this court at the November term, 1907. Reversed and remanded. Opinion filed April 21, 1908.

LANE & COOPER and W. G. WEBSTER, for appellant; ARTHUR W. UNDERWOOD, of counsel.

WILLIAMSON & SNELL and JETT & KINDER, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action on the case brought by Paul Bonato, administrator of the estate of Nicola Bonato, deceased, to recover damages resulting to the widow and children of Nicola Bonato by reason of his death, which it is alleged was caused by the negligence of appellant. The first count of the declaration charges, in substance, that on February 12, 1906, the defendant was engaged in sinking a coal shaft; that in the prosecution of such work it employed divers servants in excavating the earth and other material necessary in sinking the shaft; that it was the duty of the defendant to use ordinary care to so conduct its work as to furnish its servants thus engaged, a reasonably safe place in which to do their work and to keep such place in safe condition during the time its servants were engaged in excavating said shaft, but that it neglected said duty and permitted said shaft to become unsafe and dangerous by permitting large quantities of ice to form and remain in said shaft near its mouth, which was likely at any time to break away, fall upon and injure those engaged in excavating said shaft; that plaintiff's intestate was a servant of defendant in excavating said shaft at a distance of sixty feet below the mouth

.thereof, and that a portion of the ice so negligently permitted to form at the mouth of the shaft became detached and fell and struck him, thereby so injuring him that he thereafter died.

The second count charges, in substance, that large quantities of ice had formed within the shaft near its top, which was likely to become detached, as the defendant then and there well knew or could by reasonable diligence have ascertained; that it was the duty of defendant to remove said ice and secure the same from falling, before ordering its servants to engage in the work of excavating said shaft at the bottom thereof; that defendant neglected said duty and negligently ordered certain of its servants to go to the bottom of the shaft at a depth of 60 feet, and engage in excavating the same without removing the ice or having secured the same so that it would not fall in the shaft; that deceased was a servant of and was ordered by defendant to work as aforesaid; that while engaged in excavating at the bottom of the shaft by the direction of the defendant a large quantity of ice so formed in the shaft near its mouth or top, not being secured from falling, broke away, fell into the shaft and struck and killed him. Both counts allege that the deceased was in the exercise of due care at the time he was injured. The plaintiff recovered a judgment for $2,500, to reverse which this appeal is prayed.

The evidence adduced by the plaintiff shows that the defendant owned a tract of land near Nokomis, Montgomery county, upon which it was engaged in sinking a main shaft, and about three hundred feet distant therefrom an escapement shaft. Work had begun upon the escapement shaft in July, 1905, and continued until some time in January, 1906. The sinking of the main shaft was begun on December 12, 1905, before the work of sinking the escapement shaft had been finished. On February 12, 1906, the main shaft was about 115 feet deep, twenty-eight feet long and ten feet wide in the clear and was divided perpendicularly into three com-

partments; the two hoisting compartments being each about ten feet by twelve feet, separated by bunting, set fourteen inches apart and open at the top. The third compartment was an air chamber two feet wide extending across the entire west end of the shaft and separated from the hoisting compartments by buntings and planks and closed at the top. The air-chamber was connected with a fan by a hood. Around the fan a house was built having one door, which was used for the purpose of entering to take care of the machinery of the fan. There was evidence tending to show that when the air-chamber had been bratticed down about 100 feet it was impossible without the aid of lights to see up into it from the bottom a greater distance than fifteen feet. The men engaged in sinking the main shaft worked in three shifts of eight hours each, each shift having from eight to ten men. Each shift was under the direction and control of a shift boss. The entire work was under the direction of a superintendent who was generally upon the ground during the day and an assistant superintendent who was upon duty during the night time. During the period from January 30, 1906, to February 12, 1906, the weather had been extremely cold and for several days prior to the accident ice had formed in and about the top of the hoisting part of the shaft, which was removed from time to time by order of the superintendent.

In January, 1906, the deceased went to work in the main shaft, at which time it was about fifty feet deep, and continued to work there until February 12, 1906, the date of his death. His work consisted in drilling, shoveling and cutting with a pick, and at times assisting in handling the timbers used in curbing the shaft. The shift of men with which he was employed began work in the hoisting shaft at eight o'clock in the morning of the accident. Before they went down in the shaft some of them noticed a quantity of ice forming in the west side of the hoisting compartment. The attention of Riley, the shift boss, was called to the ice

in the shaft, whereupon he and one of the workmen cut away a portion of the ice that had formed on the curbing on the west side of the hoisting part of the shaft near the air-chamber, and then returned to the bottom of the shaft. Shortly thereafter a blast was prepared and the men went on top and remained until after it was fired, when they returned to the bottom of the shaft and resumed work. At this time the deceased, who had been drilling in the east part of the shaft, was directed by Riley to go into the southwest corner and work with a pick in trimming down the rib. While he was working directly under the air chamber, a large quantity of ice fell down from the air chamber, so injuring him that he died shortly thereafter. He was forty-seven years of age and was experienced in the work in which he was engaged.

It is contended by appellant that the trial court should have directed a verdict for the defendant for the reason that the undisputed evidence shows, first, that it had no notice, actual or constructive, of the accumulation of any ice in the air chamber; second, that the deceased had equal means of knowledge with appellant of the existence of the dangerous conditions, and, third, that the risk of the injury received by the deceased was one incident to his employment and therefore assumed by him.

There is evidence tending to show that the attention of the shift boss, Riley, had been called to the presence of ice in the hoisting compartment on the morning of the accident, and that the same had been removed; that during the night preceding ice had several times fallen from the upper portion of the shaft upon the men employed at the bottom, and that the shaft boss, Evans, had made a partial inspection of the air chamber to ascertain whether ice had formed there also, but that prior thereto no inspection had been made of the air chamber for that purpose. Under the circumstances we are not disposed to hold that there was no evidence tending to show constructive notice

to appellant of the presence of ice in the air chamber. While the evidence discloses that the deceased knew of the formation of ice in the hoisting compartment, there is evidence tending to show that he had equal means of knowledge with the superintendent and shift bosses who were on duty at all times, while the deceased was at work for but eight hours out of the twenty-four. The construction of the air chamber was such that a person working at the bottom of the shaft could not see whether there was ice therein or not. It does not appear that such fact could have been ascertained by going into the fan house or that the deceased was authorized to enter the same for that purpose. It therefore cannot be said that the deceased had full opportunities for observation nor that every person of ordinary intelligence would have known of the presence of ice in the air chamber. Having the right primarily to assume that the place was safe, he was not called upon to inspect the surroundings with care. Inspection and investigation would have been necessary to have advised him of the dangerous condition, and that was not required of him. Rock Island v. Pohlman, 210 Ill. 133.

When the deceased entered the service of appellant he necessarily had in view the risks ordinarily connected with such service, and by his contract of employment he assumed such risks. If he received the injury which caused his death from the incidental risks and hazards ordinarily connected with the employment, appellant cannot be held responsible. It was the duty of appellant to use reasonable care to furnish the deceased with a reasonably safe place in which to work. He did not assume risks or dangers due to a failure by appellant to perform such duty, which he had the right to assume had been performed, unless he had notice that it had not been and that the place provided for him to work was not reasonably safe, or if such unsafe condition was so apparent as to have been obvious to a person of ordinary intelligence, in which

event he was chargeable with knowledge of such condition and the risk and danger arising therefrom, and assumed all risk of injury from the defect by voluntarily continuing in the service. Schillinger v. Smith, 225 Ill. 74.

Under the evidence in the record the questions whether, by the exercise of due care, the presence of ice in the air chamber could have been discovered by appellant; whether the deceased had equal means of knowledge with appellant of such fact; and whether under the rule of law stated, he assumed the risk of injury therefrom, were clearly issues of fact for the determination of the jury under proper instructions, and the trial court properly refused to direct a verdict for appellant at the close of all the evidence.

The complaint of appellant as to the rulings of the court upon certain of the instructions given in behalf of appellee, is, however, well founded. No. 3, while directing a verdict, omits the essential requirement that the deceased did not know the condition of the air chamber at the time he was injured and did not have equal means of knowledge with appellant of such condition. No. 5 incorrectly tells the jury that when an employer fails to use reasonable care to furnish safe premises, the risks arising from such failure are extra-hazardous and are not assumed by the employes. The employer is required only to exercise reasonable care to furnish his employe a reasonably safe place in which to work. Schillinger v. Smith, *supra.*

By No. 7, which also directs a verdict, the jury are told that if the dangerous condition which caused the death of the deceased could have been prevented by the exercise of reasonable care on the part of appellant, then the risks arising from such condition were not assumed by the deceased, thus ignoring the qualifications of the rule that an employe cannot assume that the place provided is reasonably safe if he knows the contrary, or if the defects are open and obvious to a person of ordinary intelligence.

There was no error in the rulings of the court upon the evidence. For the errors indicated, the judgment of the Circuit Court will be reversed and the cause remanded. The motion to tax costs of additional abstract against appellant is allowed.

*Reversed and remanded.*