## John W. Peebles, Appellee, v. O'Gara Coal Company, Appellant.

1. EVIDENCE—*when question not leading.* A question is not necessarily leading even though the answer "yes" or "no" may be given.

2. EVIDENCE—*when objection as to qualification to give opinion waived.* Specific objection as to qualification is essential to save for review the question as to whether or not a witness stating an opinion with respect to a matter upon which opinion evidence is competent, is qualified to give an opinion.

3. EVIDENCE—*when refusal to strike out unresponsive answer not ground for reversal.* If no harm appears to have resulted it is not reversible error to refuse to strike out an answer technically unresponsive.

4. INSTRUCTIONS—*when giving of instruction authorizing recovery upon insufficient count will not reverse.* If the jury by their verdict found the defendant guilty upon an insufficient count and also upon a sufficient count, the fact that the court has given an instruction authorizing a recovery upon such insufficient count will not reverse.

Action in case for personal injuries. Appeal from the Circuit Court of Saline county; the Hon. A. W. LEWIS, Judge, presiding. Heard in this court at the February term, 1908. Affirmed. Opinion filed September 12, 1908.

DENISON & SPILLER, for appellant; M. S. WHITLEY, of counsel.

CHOISSER, CHOISSER & KANE, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This was an action of case brought by appellee to recover damages for injuries alleged to have been received by him while at work as a miner in appellant's mine, in consequence of the wilful violation of certain provisions of the Mining Act, by appellant.

The declaration originally consisted of four counts, but the third count was withdrawn by appellee at the close of his case and the jury found defendant guilty only on the first and fourth counts.

The first count charged that appellant wilfully and knowingly failed and neglected to provide appellee with a sufficient supply of props, caps and timbers, after demand by him therefor, as nearly as possible in suitable lengths and dimensions for securing his working place, whereby a large quantity of rock and slate fell from the roof of said working place and injured him.

The fourth count charged that on the morning of the day appellee was injured, his working place was in a dangerous condition before he entered the mine to work; that appellant wilfully permitted, suffered and allowed him to enter his working place to work therein, without the directions or without being under the directions of the mine manager, before said dangerous place was made safe.

There was a plea of not guilty and a verdict in favor of appellee for $1,500. Motions for a new trial and in arrest of judgment were interposed by appellant, overruled by the court and judgment entered for the amount of the verdict.

Appellee, as the proofs in the case show, was a coal miner forty-nine years of age, earning three dollars a day, and had been employed in appellant's mine from September, 1905, to the time of his injury, which occurred on August 13, 1906. The coal was mined by

being cut loose with a machine and then shot down with three shots, one in the center called the break-down shot and one on each side. The evening before the injury, appellee fired three shots, which had been put in by himself and his son but could not see the condition of the roof on account of the smoke. When he went to work the next morning, he found the shots had knocked the coal down on the right and left sides, but that the center shot was standing against the roof, and a piece of loose hanging draw slate extended about three and a half feet out into the room. He took a pick and tried to pull the loose slate down, but could not move it. After loading the coal that had been knocked down, appellee about two o'clock in the afternoon attempted to mine or take coal from the center shot, standing at the right side of it. He only struck one blow with his pick when the center shot dropped down and the slate from the roof swung around and fell on him. His left leg was broken and he was so bruised and injured that he had been able to work only about two weeks from that time to the time of the trial some thirteen months later. Three or four days before the injury, appellee ordered cap pieces and six and a half foot props from the mine manager, and a day or two later ordered the same from the driver, but none were furnished him, though a load of seven-foot props was brought, which he testified he tried to set up, but could not use on account of their length. Six and a half foot props and cap pieces were necessary to prop up the slate until the coal was mined away from it. On the morning of the day of the injury he ordered cap pieces from the acting manager and was informed by him there were "none on the job." Afterwards on the same day he ordered cap pieces from the driver, but they were not furnished him. There were no danger marks of any kind placed in appellee's room before or after he went to work. The mine examiner testified that he visited appellee's room that morning; that he saw the draw-slate was loose as it always is over a

standing shot; that he did not get within five or six feet of the face as there was loose coal that prevented him from getting closer; that he examined the roof and sounded it and it was all right; that back from where the coal was, some two or three feet, there was some loose slate; that he did not place any danger mark in the room but marked with chalk on the roof, the date of the examination.

No question is made by appellant in its brief or argument as to the sufficiency of the evidence to sustain the verdict, but it claims the judgment should be reversed solely on account of errors of the court in its rulings in regard to the evidence and instructions. Upon the trial appellee was asked by his counsel: "Q. Now you may tell the jury whether or not if you had any cap pieces and props of proper length if you could have propped that piece of rock?" To which he answered, "Yes, sir; that was what I wanted with cap pieces." He was then asked, "Q. You may tell the jury whether or not in your opinion as a miner if there had been a prop and cap pieces under the slate in question, it would have fallen?" And answered, "No, sir."

Objections were made to these questions and overruled by the court. Appellant here insists that these questions were leading and suggestive and that they called for his opinion upon a matter upon which he had not qualified. While it is true these questions could be answered by "yes" or "no," yet they do not appear to us to be leading or necessarily suggestive. The testimony of appellee showed that he was a miner of experience having been engaged in mining coal ten years, presumably competent to testify upon the subject concerning which he was asked, and appellant did not at the time object that appellee had not qualified to testify upon the subject. The court therefore properly overruled the objections. It also appears that there were a number of other witnesses, all practical miners, who testified substantially to the same thing. Appellee was also asked whether or not any mine manager

on the morning in question gave him instructions or directions in regard to his work in that room, and replied, "Well, sir, he never told me to stay out or anything about it; he never told me the place was in bad condition." Counsel for appellant objected to the last part of the answer and moved to strike it out, but the objection and motion were overruled. This answer was not strictly responsive to the question and the latter part of it might well have been excluded by the court on motion, but the answer as a whole practically amounted to a statement that appellee was not given any instructions or directions by the mine manager, which was a proper subject of inquiry and the form of the answer was not sufficiently erroneous to be material.

It is also objected that Valley Peebles, the son of appellee, was permitted to be asked whether or not the shot of coal or any part of it fell upon his father, which question he answered, "No, sir, there wasn't any fell on him; there wasn't nothing but the slate." One of the questions being investigated was whether or not appellee was injured by a fall of coal, or of slate. This question bore upon that subject directly and seems to us to have been entirely proper. Besides there were other witnesses testified to the same fact and it was practically uncontradicted that appellee's injuries were caused by a fall of slate. Several witnesses were asked whether there were any other props scattered around over the room. These questions were objected to as leading and appellant now insists that the court erred in permitting them to be answered.

The subject-matter of the questions was one which was being investigated by both sides, was entirely proper, could not well have been asked in any other form than the one in which they were put and seem to us to be wholly unobjectionable.

A more serious question raised by appellant is that the court refused proper evidence offered by it, upon the objection of appellee. Appellee had been permit-

ted to prove that he had ordered props and caps from the driver; that the miners usually ordered props from the drivers, which was a practice in that mine.

Appellant asked Thomas Lawson, the mine manager, the following question: "Now what is your custom and practice in this defendant's mine in reference to props and cap pieces being delivered by drivers whenever they are ordered by the miners; that is, has the driver a certain route he goes over?" and he answered, "Well it is the rule of the company to order the props from the mine manager." Appellee objected to the answer as to the rules of the company and the objection was sustained.

Appellant's contention is that the question and answer tended to prove a rule of the mine in reference to ordering props and cap pieces which was a proper subject of proof, especially as appellee had been permitted to testify as to the custom of the mine in that regard. The vice of the answer was however that it was not responsive to the question. The question was in fact a double one and the answer was not responsive to either part of it. It is evident however that counsel for appellant had in mind simply the last portion of the question, that is as to whether the driver had a certain route to go over, which question had nothing whatever to do with the custom referred to. That counsel for appellant had in mind the latter portion of the question only, is evidenced by the question immediately following, which was, "I am asking you this question, have drivers certain routes they go over" which was answered without objection, "Yes, sir, they usually have a certain run."

It thus appears that the question appellant sought to have answered was really answered without objection. It is further to be said however that the proof showed that appellee not only ordered props and caps of the driver but also of the manager Lawson, and of the acting manager Armstead.

The above objections urged by appellant to the rul-

ings of the court upon the evidence refer almost wholly to proofs relating to the first count of the declaration. Appellant in his reply brief insists, that it was not shown the failure to furnish the props was the proximate cause of appellee's injury and that the real cause of the injury was the wilful act of appellee in striking the standing shot with a pick and thus causing the slate to fall. We are of opinion that the questions so raised were for the jury and that there was sufficient evidence to support a finding upon those questions in favor of appellee.

Appellee's seventh instruction set out the charge against appellant contained in the fourth count of the declaration, and told the jury if they believed from the evidence plaintiff had proven his case as charged in said count, etc., they should find the defendant guilty under said count. Appellant insists that this instruction was erroneous because the fourth count as a matter of fact set out no case upon which there could possibly be a recovery. This count charged that appellant wilfully permitted plaintiff to enter its mine, etc., before a dangerous condition alleged to exist had been made safe, and is based upon section 18 of the act in relation to Mines and Miners.

Without going into a discussion of the matter it is sufficient to say we are of opinion the fourth count lacked elements necessary to constitute a good cause of action and that the instruction based upon it was erroneous. The sixth and eighth instructions also presented propositions of law which could only arise under the fourth count and were erroneous.

In Schillinger Bros. Co. v. Smith, 225 Ill. 74, it is said, "The court gave an instruction at the request of the plaintiff which authorized the jury to find for him if he proved the allegations contained in his original declaration or the additional counts or any of said counts, by a preponderance of the evidence. * * * In this case the second count of the declaration did not state any cause of action and if it did not appear that

the verdict was not based on that count, the giving of the instruction would be serious error.'' In that case the jury returned a special finding showing that they did not base their verdict on the second count. In this case the jury returned a verdict finding defendant guilty as charged both in the first and fourth counts of the declaration. The fourth count not stating a cause of action, and the instruction permitting a recovery based upon it being erroneous, a verdict could not be sustained in favor of appellee upon that count. The first count, however, was based upon a different section of the statute and the proof was sufficient to support the verdict in favor of appellee which the jury gave upon it. The injuries for which appellee sought to recover were identical under the two counts so there could be no difference in the measure of damages which appellee could legally recover, whether he recovered on one count alone or upon both. The fact therefore that the verdict could not be sustained under the fourth count, does not render erroneous or affect the verdict in favor of appellee upon the first count.

Objections made to certain other of appellee's instructions are not of a serious nature and do not appear to us to be well founded.

Complaint is made by appellant that the court erred in refusing four of the first instructions offered by it. We are of opinion however that the twenty-eight instructions given for appellant by the court fully covered the law applicable to its theory of the case and that appellant has no just cause of complaint in that regard. The verdict of the jury in favor of appellee upon the first count of the declaration was sufficient to warrant the judgment of the court below in his favor, and such judgment is accordingly affirmed.

*Affirmed.*